No. 47,494

FRANCES R. GECHTER, *Appellant,* v. DALE I. GECHTER, *Appellee.*

(532 P. 2d 1089)

Opinion filed March 1, 1975.

*Robert F. Duncan,* of Duncan, Senecal and Bednar, Chartered, of Atchison, argued the cause, and *George D. Wagstaff,* of Topeka, was with him on the brief for the appellant.

*Edward S. Dunn,* of Holton, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is a divorce action in which the controversy on appeal is over the division of property. The case was heard on three separate days in December, 1972. On December 20, the trial court granted both parties a divorce on the grounds of incompatibility, granted the wife custody of the parties' minor child, and ordered the husband to pay child support. No complaint is made of those portions of the judgment. Property division was taken under advisement, the court expressing an intent to make the division "just as nearly equally as it's possible to divide it."

After some further communication between court and counsel, to be discussed later, a judgment on the remaining aspect of the case was rendered on April 19, 1973. The wife, feeling aggrieved, filed in sequence a motion to alter or amend the judgment, an amended motion to alter or amend, and a motion for relief from the judgment. These were each in turn overruled. She has appealed from that part of the judgment and all other orders that relate to the property division. She contends primarily that the trial court failed to achieve its objective of equality by undervaluing certain assets set over to the husband.

The parties had been married for over twenty-six years. She had

taught school, while he had farmed and operated a small gasoline distributing business. The trial court found their gross estate to be worth $95,005, subject to debts of $28,650. Each party was awarded personal property over which there is no dispute. The chief valuation controversy is over two farms which were awarded to the husband, subject to the debts and an equalizing payment to the wife.

The two farms, both in Atchison county, were the 169-plus acres referred to as the "Jerome" place and the 82 acres known as the "Bechtold" place. The parties bought the Jerome place in 1963 for $26,000, the Bechtold place a year or two earlier for $10,000. Three court appointed appraisers fixed their valuation in December, 1972, at $32,500 and $18,000 respectively. Those were the values employed by the court in making the property division, and which the appellant wife contends are too low. Her main thrust is directed at the Jerome place, which she contends is worth at least $50,100; she offered to have it awarded to her at that figure.

In support of her contention she offered the opinion evidence of one Milton Handke. He was a neighbor owning land adjoining the Jerome place. He had lived in the area all his life, farmed 1200 acres, and had owned the adjoining farm for twenty years. He claimed familiarity with land sales in the area. He first offered to testify that he would be willing to pay $50,100 for the Jerome place, and this testimony was rejected. He was then asked his opinion as to market value, and an objection was again sustained. A proffer of his opinion testimony that $50,100 was the land's fair market value was also rejected.

We conclude that it was error to reject this testimony when it was put in the form of an opinion on the market value. We have frequently held that a neighboring landowner who is thoroughly familiar with a piece of land is competent to express an opinion as to its value. See *Fox v. Wilson*, 211 Kan. 563, 507 P. 2d 252; *Hodges v. State Highway Commission*, 198 Kan. 80, 422 P. 2d 570, and cases cited. While the trial court is the first judge of a witness's competence to give an opinion, there is no reason appearing in the record for rejecting the opinion testimony of this witness. He appears to have been fully qualified to give an opinion.

In fact, it would appear from various colloquies between court and counsel that the evidence was not rejected because the witness was not qualified, but because the trial court thought that the value fixed by the appraisers was binding unless directly

impeached. The court indicated that no independent evidence of value would be received unless the appraisers were first called and asked about how they arrived at their valuation. We find no support for that proposition. There is no agreement in the record that the valuation of the appraisers was to be binding on the parties, and in the absence of such agreement we think any competent evidence of value should have been admitted, to be given such weight as the court saw fit.

The same type of "neighbor" opinion testimony was proffered and rejected as to the Bechtold tract. Although in this instance the discrepancy in valuation was not as great, we think the same error occurred.

A second and distinct controversy turns on the award of a matured but unharvested crop of soybeans, valued as of the date of divorce at $12,000. In a letter to counsel dated December 29, 1972, the trial court set out its tentative decision on the property division. In it, the soybeans were awarded to the wife. The husband's equalizing payment on all property was fixed at $19,282.50, to be paid in by January 15, 1973. If this was not done, the court proposed that the Jerome place be put up for sale on sealed bids at private sale for thirty days, with the parties having the right to bid. The court recognized that "there may be a few minors bugs in either of these plans," but wanted to get the information to the parties promptly so they could prevent waste of the assets.

The events that followed are somewhat unclear, and counsel's statements of them vary. As recited in the journal entry, prepared by the trial judge in April because counsel could not agree, they were as follows:

Around January 8, the husband's counsel telephoned the trial judge and advised him that there was some difficulty in raising the required cash equalizing payment, but that it would be easier to borrow the money if he had the unharvested soybeans; the judge indicated that such a change might be arranged. On January 12, the husband's counsel conferred personally with the trial judge. At that time the judge definitely awarded the husband the soybeans, and he immediately paid $24,208.24 into the clerk's office. On January 15 (the original deadline for the $19,282.50 payment first ordered) the husband made an additional and final payment of $10,282.50. (The total covered an education trust fund of $3,000 and, we assume, court costs in addition to the equalization payment.) Only after the change was definitely made and all the

money paid in was the wife's counsel advised of the judge's change of mind.

Appellant's complaint of this *ex parte* dealing is bitter, and is made more so by her assertion that the soybean market was skyrocketing during this period. She asserts first that the judge's December 29 letter to counsel, which was filed with the clerk, was a final judgment under K. S. A. 60-258, which could only be altered on timely motion under K. S. A. 1974 Supp. 60-259. We cannot agree with this contention. She concedes that whether the letter constituted a judgment depends on whether the trial court considered it so and directed its entry. *Roe Village, Inc. v. Board of County Commissioners*, 195 Kan. 247, 403 P. 2d 970. Here, the court in its letter set forth two plans and noted that each probably had "bugs" in it. The language used clearly implies that the letter was tentative, and subject to later modification.

Nevertheless, we cannot approve the *ex parte* modification made here, even though modification was within the trial court's authority. Compare, *Smith v. Smith*, 171 Kan. 619, 237 P. 2d 213. The change made here was one of substance, on which the wife had a right to be heard even if she might not prevail. The only justification offered by the husband for not making more serious attempts to notify opposing counsel was the pressure of the January 15 deadline. If this were not met, he says, he might have had to expose the Jerome place to the risk that the wife or some stranger might outbid him. We fail to see how this helps him. If anything, it tends to indicate that the Jerome place was undervalued.

Finally, complaint is made of the valuation put on the gasoline business awarded to the husband. An item by item listing of the assets by him gave a valuation of around $10,500, although he was uncertain as to some items and thought his inventory for tax purposes was high. The trial court ascribed to the business an "adjusted value" of $6,600, which the wife says is unsupported by any evidence. We must confess that we are unable to find in the record the basis for the adjustment made by the trial court, although there may have been a perfectly sound one.

We have concluded that the cumulative effect of the factors noted above requires a new trial on the issue of property division. At that trial each party will be free to introduce such relevant evidence as may be desired bearing on the valuation of the property as of December 20, 1972, and on a just and reasonable division thereof. Because of the peculiar nature of the difficulties en-

countered in the first trial, we deem it expedient that the new trial be before a different trial judge, and we so direct. Although neither party complains about the exact equality of division sought by the original decree, we do not believe the new judge should necessarily be bound by that portion of the judgment, either.

In view of our disposition of the case, other matters raised need not be considered. The judgment is reversed and the case is remanded for a new trial in accordance with the views expressed herein.

APPROVED BY THE COURT.

KAUL and OWSLEY, JJ., dissent.