No. 47,744

Doris Jean Mies, *Appellee*, v. Allen Edward Mies, *Appellant*.

(535 P. 2d 432)

Opinion filed May 10, 1975.

*Charles F. Forsyth,* of Erie, argued the cause, and *Clark M. Fleming,* of Erie, was with him on the brief for the appellant.

*Richard C. Dearth,* of Jones & Dearth, Chartered, of Parsons, argued the cause, and *Glenn Jones,* of the same firm was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a partition action which is the aftermath of a divorce proceeding.

The pertinent facts necessary to sustain our decision on appeal may be stated as follows: More than 60 days prior to February 17, 1971, Doris Jean Mies (plaintiff-appellee) filed a petition for separate maintenance against her husband Allen Edward Mies (defendant-appellant). The matter was assigned for hearing on the 17th day of February 1971, and the defendant was in default of pleading or appearance. There was an indication in argument on this appeal that the defendant was led to believe the plaintiff would grant him a divorce under no circumstances which would free him for remarriage. However when the plaintiff appeared in the district court on February 17th she asked and was granted leave to amend her petition by interlineation instanter from separate maintenance to absolute divorce. She introduced her evidence and rested and the case was closed.

She told the court in the divorce proceedings the parties had 160 acres of farm land, which she wanted, and a 180 acre farm. Actually the parties owned only 80 acres, in addition to the 160 acre farm. The 160 acres had the house on it. Nowhere did she list any property specifically in her petition for divorce or set out the value or the indebtedness on the property. A few items of personal property were mentioned in her testimony but not all of it.

The trial court in the journal entry of divorce granted the wife "the 1969 Ford pickup, household goods and furnishings, the 160 acre real estate, *one-half the value of the machinery and one-half the value of the cattle*" (emphasis added) and other items not in controversy. The husband was awarded the balance of the property not specifically granted to the wife. *The journal entry in the divorce proceeding does not itemize the farm machinery or the number of cattle owned by the parties at the time of the divorce.*

In addition thereto the wife was granted the care, custody and control of the minor children and the husband was ordered to pay $200 per month for the support of the minor children during their minority.

When the husband heard about the divorce on the following day he immediately filed a motion to set the divorce decree aside. The husband continued to farm the property formerly owned by the

parties and according to both the husband and the wife, the parties talked about the defendant's motion and property settlement. They talked about the indebtedness on the machinery and the wife's knowledge of indebtedness on the 160 acre farm awarded to her.

The trial court in the divorce proceeding made no order or finding concerning the debts of the parties, although in her testimony in the partition action the wife agreed that these were considerable and that she was told by her attorney that she was required to pay all the debt on her 160 acres. The wife further testified in the partition proceeding that she was willing to pay half of the debts on the machinery, because it was a debt in the bank.

There is evidence in the record that the husband and wife were talking with each other regularly and had reached agreement with respect to the property. Thereupon the husband's attorney wrote to the wife's attorney regarding these conversations. In August 1972, the wife requested her attorney to write the appellant's attorney the following letter:

"Please refer to my letter of June 8, 1971, regarding the above captioned case. My client has again contacted me in the regard and has recently had a conversation with your client.

"Your client informed Mrs. Mies that he did not wish to proceed with this action and was satisfied with the matter as it now stands."

As a result of this letter the husband dismissed his motion to set aside the default judgment, indicating that both parties had agreed they were satisfied with the matter as it stood at that time. This was interpreted by the appellant to mean that he was entitled to have the machinery and the 80 acres with the wife taking the 160 acres, house, furniture and other property awarded to her, subject to the debt owed to the husband's father on the 160 acres of land awarded to the wife.

In the brief filed herein the wife does not agree with the foregoing interpretation of the letter which resulted in the husband's dismissal of his motion to set aside the default judgment.

This court was informed on argument that the husband remarried, and subsequent thereto the wife filed this partition action alleging that pursuant to the divorce decree she and the appellant each owned an undivided one-half interest in certain personal property, listing nineteen items of farm machinery and fifteen cows with calves for a total appraised value of $18,194, as tenants in common; that the appellant has denied the appellee the right to use and possess the personal property, and the appellant's use of

the property has depreciated and wasted the assets. The court was requested to partition the personal property according to the respective interests, or if partition could not be made without manifest injury the property should be appraised and sold and the proceeds divided accordingly.

The appellant's answer admits the divorce decree awarded the appellee *one-half of the value of the farm machinery,* but denies the appellee's remaining allegations. The answer alleges the parties owned only a part of the personal property itemized. It further alleges that he and the appellee entered into an agreement whereby the appellee was to drop all claims to the cattle and machinery in consideration of the appellant's dismissal of a motion he filed to have the divorce decree set aside.

The appellant also filed a counterclaim in which he alleged that he was indebted to his father, L. N. Mies, for $15,000 which represents the amount borrowed in order to purchase the 160 acres of real estate granted to the appellee in the divorce decree, and that he was obligated to repay that amount when the balance of the purchase price for the land is paid. The answer alleges the appellee knew of the agreement and is responsible to the appellant in the sum of $15,000 for which he is obligated to his father.

The appellee in her reply alleged the counterclaim failed to state a cause of action; that L. N. Mies is not a party to the action and cannot be granted relief; and the appellee denied any liability to either the appellant or his father.

At the trial in the partition proceeding, the appellee denied making any agreement with the appellant to forego her claim to the personal property mentioned in her petition in return for his dismissal of the motion to set aside the divorce decree. The appellee admitted that the appellant continued to farm the real property granted to the appellee, and they saw each other regularly. The appellee testified that after a conversation with the appellant in August 1972, she requested her attorney to write the appellant's attorney a letter as heretofore quoted.

The appellee testified she was aware the combine listed in her petition was mortgaged and she would be willing to pay half of the indebtedness if she received one-half of the combine's value; she stated at one point in cross-examination that she was unaware of any outstanding debts on the 160 acres of realty, but later testified that she knew there was money owed on it and she had been told by her attorney that she had to pay off the indebtedness;

and although she had not signed a note for any of the machinery she was willing to pay one-half of the indebtedness thereon.

The appellant testified that after the appellee obtained the divorce they conversed regularly and one of the subjects was who would pay off the indebtedness of the machinery. He testified as follows regarding their final agreement:

"Q. Was there any final agreement reached between you?

"A. Well, there was several times between her and I—we had an agreement worked out.

"Q. What was it?

"A. Well, she told me several times to take the machinery and get the hell out of there.

"Q. Was this the time—

"A. —Just get off her place.

"Q. This was when your motion was pending?

"A. Yes.

"Q. Was this the reason your motion was dismissed?

"A. Yes."

According to the appellant he purchased, built or sold some of the items of machinery mentioned in the appellee's petition filed herein subsequent to the divorce; the cattle have been sold and the proceeds were applied to the mortgage on some machinery; and the mortgages outstanding on the machinery amount to $4,750.

On the subject of the 160 acres of realty granted to the appellee in the divorce, the appellant testified that his father had loaned the appellant and appellee $7,500 which was used as a down payment; it was not a gift, but a debt owed his father; and the appellee was aware of their agreement to repay his father.

The contract for the purchase of the quarter section of land given to the appellee is dated September 11, 1962, and calls for a downpayment of $5,500 plus $9,500 when abstract of title is approved by the purchaser. It is an installment contract requiring payments of $4,000 plus interest annually. The total purchase price was $55,000.

The trial was to the court without a jury and after hearing all the evidence the trial court found "generally in favor of the plaintiff and against the defendant". The court ordered that the appellee "have and take judgment for one-half of the value of the personal property as set out in the divorce decree . . . less one certain 1969 Ford pickup listed as Chevrolet two-ton grain hoist, and said property be appraised" by three individuals, and that the appellant pay one-half of the total appraised value of the property.

*There is no mention in the journal entry of the appellant's counter-*

*claim. There is no personal property described in the divorce decree as journalized, except the 1969 Ford pickup.*

Examining for a moment the state of the record before us, it is readily apparent there is a dispute between the parties as to whether or not the nineteen items of farm machinery and the cattle itemized in the petition herein were in fact owned by the parties at the time of the dissolution of their marriage; there is a further dispute of fact concerning whether or not the parties orally agreed to compromise the property settlement; controversy also exists as to whether or not the appellee is liable to the appellant for the loan from his father; and there is ambiguity as to whether the divorce decree and the judgment in the partition case granted the appellee one-half of the *net value* of the personal property or simply one-half of its *fair market value.*

The trial court's finding "generally in favor of the plaintiff and against the defendant" does not resolve the issues, and they cannot be resolved from the record here presented. In actions of this nature tried to the court the trial judge is required to make findings of the controlling facts (K. S. A. 60-252 [a]) and state the legal principles controlling the decision (Rule No. 116, 211 Kan. xlii).

K. S. A. 60-252 provides in part as follows:

"(a) *Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the judge shall find, and either orally or in writing shall state, the controlling facts, and judgment shall be entered pursuant to section 60-258. . . ."

Rule No. 116 provides in pertinent part:

"REASONS FOR DECISIONS. In all contested matters submitted to a judge without a jury, the judge shall, in addition to stating the controlling facts required by K. S. A. 60-252, briefly state the legal principles controlling the decision. . . ."

In *Read v. Estate of Davis*, 213 Kan. 128, 515 P. 2d 1096, the case was remanded for further findings, stating:

"Our cases are legion to the effect that the trial court is the one empowered to weigh the evidence, determine the credibility of witnesses, and find the facts. With that power goes the concomitant duty to set forth the controlling facts and principles of law. We have recently said:

" 'In civil actions tried to the court the rules requiring expression of controlling findings of fact (K. S. A. 60-252 [a]) and controlling principles of law (Rule No. 116, 209 Kan. xxviii) are designed as an aid to the integrity of the decision. They are mandatory and should be fairly observed by the trial judge.' (*Duffin v. Patrick*, 212 Kan. 772, 512 P. 2d 442, Syl. ¶ 2.)

"To the same effect, in *Andrews v. Board of County Commissioners*, 207 Kan. 548, 555, 485 P. 2d 1260 we said:

" 'The findings required by K. S. A. 60-252 (*a*) should be sufficient to resolve the issues, and in addition they should be adequate to advise the parties, as well as the appellate court, of the reasons for the decision and the standards applied by the court which governed its determination and persuaded it to arrive at the decision. These requirements are apparent in the statute itself.'

"Where the findings and conclusions of the trial court are inadequate to permit meaningful appellate review, the appellate court has no alternative but to remand the case for new findings and conclusions. *White v. State*, 201 Kan. 801, 443 P. 2d 182. Cf., *Cities Service Gas Co. v. State Corporation Commission*, 201 Kan. 223, 440 P. 2d 660; *Kansas Public Service Co. v. State Corporation Commission*, 199 Kan. 736, 433 P. 2d 572. That is the course we must follow here." (pp. 135, 136.)

(See, also *Clithero v. Key Securities, Inc.*, 214 Kan. 380, 520 P. 2d 1225; and *Froelich v. Adair*, 213 Kan. 357, 516 P. 2d 993.)

The difficulty encountered on the record herein is that the evidence is insufficient to resolve some of the issues. Under these circumstances our only alternative is to remand the case for a new trial on all issues, with each party free to introduce such relevant evidence as may be desired bearing upon the issues presented. Because of the peculiar nature of the difficulties encountered in the first trial, we deem it expedient that the new trial be before a different trial judge, and we so direct. (See, *Gechter v. Gechter*, 216 Kan. 360, 532 P. 2d 1089.)

The judgment of the lower court is reversed with directions to grant a new trial on both the petition and the counterclaim.

FROMME, J., not participating.