No. 48,154

TRUSTEES OF BAKER UNIVERSITY, *Appellants*, v. TRUSTEES OF THE ENDOWMENT ASSOCIATION OF KANSAS STATE COLLEGE OF PITTS- BURG, PITTSBURG, KANSAS, *Appellees.*

(564 P.2d 472)

Opinion filed May 14, 1977.

*J. Michael Haskin,* of Olathe, argued the cause, and *Harley V. Haskin,* of Olathe, was on the brief for the appellants.

*Garry W. Lassman,* of Wilbert, Lassman, Toburen & Wachter, of Pittsburg, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: This litigation stems from probate proceedings in the estate of Esme Cellars, deceased, in the probate court of Labette County. The issue presented is whether a gift made by the

deceased in her lifetime to appellees took the place of and adeemed by satisfaction a bequest to appellees contained in the Last Will and Testament of deceased.

For convenience the appellants will sometimes be referred to as Baker and the appellees as Pittsburg.

Esme Cellars and her brother, S. R. Cellars, neither of whom was married, lived together for many years at Chetopa in Labette County. On December 18, 1965, each made and executed a will prepared by their attorney, John F. Amos, of Oswego. The wills were reciprocal in that each left all of his or her property to the other if the other survived, and in case the other did not survive the testator or testatrix, then each devised the same farm to their cousin George Tullis, each bequeathed the sum of $20,000.00 to Pittsburg for the establishment of a scholarship fund, and each devised and bequeathed the residue of their respective estates to Baker.

S. R. Cellars, sometimes referred to as Roscoe by the witnesses, died on March 15, 1971, predeceasing Esme. Since their property was held jointly Roscoe's will was not probated. Sometime after Roscoe's death Esme advised her attorney, Mr. Amos, that she had decided to convey the farm to her cousin, George Tullis. The farm in question was devised to Mr. Tullis in item (a) of the third paragraph of each of the two wills. At the same time she also advised Mr. Amos that she desired to establish a scholarship fund at Pittsburg during her lifetime as she and her brother Roscoe had expressed in their wills. As directed by Esme, Mr. Amos prepared a deed for conveyance of the farm to George Tullis and made inquiry about the procedure for establishing a scholarship fund at Pittsburg. The deed to George Tullis was executed by Esme on February 3, 1972, completing the gift of the farm. Mr. Amos testified that in connection with the scholarship fund, Esme stated that she desired to establish the fund in the amount of $40,000.00 to carry out the plan expressed in her will and the will of her brother. After correspondence with Clifford E. Beougher, business manager of Pittsburg, and secretary-treasurer of the Endowment Association of the College, Mr. Amos prepared a document for the establishment of a scholarship fund at Pittsburg, which was approved by the Endowment Association, and at presentation ceremonies held at her home on September 13, 1972, the scholarship document was executed by Esme and the president of the Endowment Association.

Four months after the presentation ceremonies, Esme died on January 5, 1973. In due course her 1965 will was admitted to probate and in the course of the proceedings George Tullis, executor, filed a petition for instructions alleging the facts concerning the gift to Pittsburg and asking the court to determine whether the $20,000.00 bequest should be paid to Pittsburg.

Pittsburg filed an answer to the executor's petition for instructions alleging in substance that the $20,000.00 will bequest and the $40,000.00 inter vivos gift to the Endowment Association were two separate and distinct funds and moved the court to dismiss the petition for instructions and to order the executor to forthwith comply with the will.

Baker also filed an answer alleging in pertinent part:

"(8) Baker University alleges that the intent of Esme Cellars in making the inter vivos gift of Forty Thousand ($40,000.00) Dollars to Pittsburg College on September 13, 1972, was to establish the same memorial scholarship fund which subparagraph (b) of Item Third of her Will intended to create and that it was her intent that such lifetime gift was to take the place of and to adeem by satisfaction said testamentary bequest."

Baker moved the court to hear the evidence as to the facts and the intent of Esme and for an order determining that the bequest to Pittsburg in Esme's will had been adeemed by satisfaction, and, therefore, is null and void and that the executor be instructed to proceed accordingly.

After hearing extensive evidence the probate court made comprehensive findings and concluded that the evidence clearly showed it was decedent's intention and purpose in establishing the scholarship fund at Pittsburg in her lifetime that it should take the place of and carry out the plan which she and her brother had made and expressed in their wills for the establishment of such scholarship fund at Pittsburg; and further, that it was not decedent's intention that having established such scholarship fund in her lifetime that Pittsburg would receive additionally the $20,000.00 bequeathed for such purpose by her will; and that it was her intent and purpose to execute a new will eliminating the devise to George Tullis and the bequest to Pittsburg and leaving her entire estate to Baker. This last finding was based on testimony of Mr. Amos that at Esme's direction, following the presentation ceremonies, he prepared a will eliminating the devise

and bequest referred to, but that Esme died without executing the new will. The testimony of Mr. Amos concerning this matter will be discussed later in the opinion.

Pittsburg appealed to the district court. After a trial *de novo* the district court ruled contrary to the decision of the probate court as follows:

"Thereafter, on the 24th day of June, 1974 the Court, after having reviewed the record and authorities and after receiving briefs and written arguments of the parties, finds that the inter vivos gift of Esme Cellars of $40,000.00 to Kansas State College of Pittsburg, Pittsburg, Kansas, was accompanied by a written, clear and unambiguous agreement to be set up in a certain fund and administered in a certain manner. The Court further finds that the record does not substantiate any other purpose than an inter vivos gift of $40,000.00. The Court further finds that said inter vivos gift does not adeem the legacy and bequest in the Will of Esme Cellars of $20,000.00 to the Kansas State College of Pittsburg, Pittsburg, Kansas, and that the Last Will and Testament of Esme Cellars is a Clear expression of her intention and is unambiguous and certain as to the disposition of her property. The Court further finds that the $20,000.00 legacy and bequest set out in said Will was to create a separate and distinct and identifiable fund to be administered in a certain manner."

Following the district court's ruling this appeal was perfected.

On appeal Baker claims the erroneous exclusion of evidence in several instances; that the district court failed to recognize and apply principles of law applicable to the issue presented; and further that the district court failed to make factual findings and legal conclusions in compliance with K. S. A. 60-252(*a*) and Rule No. 116 of this court (214 Kan. xxxvii) [now Rule No. 165 ].

Before discussing applicable principles of law it is necessary to set out the language of the bequest in question and that of the endowment fund inter vivos gift. The bequest to Pittsburg appears as item (b) of the third paragraph of the will which reads:

"(b) I give and bequeath unto the Trustees of the Endowment Association of Kansas State College of Pittsburg, at Pittsburg, Kansas, the sum of $20,000.00, to be used by said trustees to establish the S. R. Cellars and Esme Cellars Fund at said College, to be administered upon the following terms:

"The income from, but not the principal, of, the S. R. Cellars and Esme Cellars Fund shall be used to provide scholarships in such amounts as said trustees may from time to time determine, for worthy and deserving students at said College, leaving to the discretion of said trustees the academic standards and the standards of need to be required of such students to qualify for such scholarships, and said income from said fund, or any part thereof, may be used by said trustees to match funds for Federal scholarships, should Federal funds be available and it be desired by said trustees, provided said matching funds and Federal funds be used

for the same purposes, and upon the same terms, as hereinabove provided.

"Said trustees are authorized to invest the S. R. Cellars and Esme Cellars Fund in government obligations, in corporate common and preferred stocks and bonds and/or in such other forms of investment as may be approved by the Trustees of said College.

"In the event that now unforeseen changes of a political, social, economic or educational nature make the use of the fund as provided above no longer practical and desirable, the President of Kansas State College of Pittsburg, and the Trustees of the Endowment Association of said Kansas State College of Pittsburg, are authorized to make such changes in the use of said fund as they may determine advisable, such use, however, to be for the promotion of the welfare of needy individual students at said College."

The bequest to Baker, which follows in item (c), is written in essentially the same language except that it bequeathed the residue of the deceased's property.

The document establishing the scholarship fund by an inter vivos gift reads:

"The S. R. and Esme Cellars Scholarship Fund is hereby established in the Endowment Association of Kansas State College of Pittsburg, Kansas, Inc., for the purpose of assisting Kansas State College of Pittsburg students subject to the following express terms and conditions:

"(1) The purpose of this S. R. and Esme Cellars Scholarship Fund is to provide scholarships for needy deserving students at Kansas State College of Pittsburg, Kansas.

"(2) The Endowment Association of Kansas State College of Pittsburg is hereby authorized at the discretion of the Board of Trustees of said Association to maintain, invest, and reinvest said Scholarship Fund in any and every kind of property, real and personal, wheresoever situated, including but not limited to common and preferred stocks, bonds, government obligations, real estate and any and all other kinds of property and forms of investment. Said Scholarship Fund may be merged and commingled for investment purposes with other funds similarly held by the Association.

"(3) The income from, but not the principal of, said Scholarship Fund shall be used to provide scholarships for needy deserving students at Kansas State College of Pittsburg and the amount of such scholarship awards and the recipients thereof shall be determined by an appropriate committee of Kansas State College of Pittsburg.

"(4) In the event that unforeseen changes render the use of the said scholarship Fund no longer practical or desirable, the Board of Trustees of the Endowment Association of Kansas State College of Pittsburg is hereby authorized to make such changes in the use of the principal or income therefrom as said Board of Trustees may deem advisable; provided, however, that the same be used to promote the welfare of needy students at said College.

"(5) To the establishment of said S. R. and Esme Cellars Scholarship Fund and the accomplishment of the purpose of said Fund hereinabove stated, I agree to pay to the Endowment Association of Kansas State College of Pittsburg, Kansas,

Inc., the sum of Forty Thousand and No/100 Dollars ($40,000.00), upon the acceptance thereof by said Association, upon the terms and conditions and for the use and purpose hereinabove set out.

"Dated this 13th day of September, 1972.

"/s/ Esme Cellars
"Donor."

In their brief on appeal appellants first contend the conclusions of the district court were contrary to the applicable law of ademption by satisfaction. Their arguments are made under two headings:

"A. The Doctrine of Ademption by Satisfaction Should Be Recognized Under Kansas Case Law.

"B. The Trial Court Failed to Apply or Understand the Doctrine of Ademption by Satisfaction."

The general concept of the doctrine of ademption has been recognized and applied in this jurisdiction for many years. (*Taylor v. Hull,* 121 Kan. 102, 245 Pac. 1026.) However, an examination of our cases dealing with the doctrine reveals no decision in which this court has actually relied upon the specific doctrine of ademption by satisfaction upon which appellants rely herein. Although this is the first appearance of the specific doctrine before this court, it is well-grounded in the common law and has been recognized by many sister jurisdictions. (6 Page on Wills [Bowe-Parker Revision], Ademption, Sec. 54.21, p. 277; Atkinson on Wills [2d Ed.], Satisfaction, Sec. 133, p. 737; 96 C. J. S., Wills, Sec. 1172, p. 985; 80 Am. Jur. 2d, Wills, Sec. 1719, p. 776; 26 A. L. R. 2d, Anno., General Legacy-Ademption by Payment, Sec. 3, p. 18.)

Although the terms "advancements" or "advances"were employed rather than ademption, the analogous equitable principles underlying advancements and ademption by satisfaction were considered in depth in the case of *In re Estate of Bush,* 155 Kan. 556, 127 P. 2d 455. *Bush* involved a testate estate wherein the testator, in his lifetime, but subsequent to the making of his will, made gifts which were spoken of as advancements to a son named as a beneficiary in the will. The arguments presented and the conclusion of the court were stated by Mr. Justice Hoch in these words:

". . . It may be argued that the testator could have changed his will at any time, and that not having done so after making the later advances, it is to be presumed

that in the absence of provision indicating otherwise he intends his will to wipe out all advances no matter when made. The argument commands respect. However, we find the argument on the other side more persuasive. The general theory upon which advances made prior to execution of the will are held to be wiped out is largely based upon a presumption that when the testator made his will he had the prior advances in mind and in the light of such advances made such disposition of his property as he desired. It would be stretching this presumption to make it include subsequent advances which he could not then have had in mind. Moreover, if a testator intends that advances which may be made after the will is executed are to be wiped out, what point is there in treating them, when they are subsequently made, as 'advances' at all? Why provide that they are to be charged against the recipient's share, when no such result is to follow? Why are they not made as outright gifts and the result sought by the testator thus simply accomplished? Advances, subsequent to execution of the will, seem to fall more logically into the same class with true 'advancements' which obtain in cases of intestacy and are charged against the recipient's share of the estate. It may be said further that this view is in line with the general doctrine of ademption, the limits and intricacies of which lie beyond any need of examination here. Suffice it to say that the doctrine, as the term has come to be used in modern law, applies to the act of a testator in paying to a legatee, in the lifetime of the testator, a legacy he had previously provided by will, or in satisfying it by giving something of value in its place. Under these circumstances the legacy is said to have been *wholly or partially satisfied or adeemed. . . .*" (pp. 562-563.) (Emphasis supplied.)

As may be seen the equitable principles underlying ademption by satisfaction were actually employed in *Bush*, although the term "advancement" was used. While "advancement," strictly speaking, applies only to intestate estates, the two terms are often used in analogous concepts in discussions of ademption by satisfaction. (See 80 Am. Jur. 2d, Wills, Sec. 1719, pp. 776-777.)

The later case of *In re Estate of Snyder*, 199 Kan. 487, 430 P. 2d 212, involved ademption by extinction; however, in discussing the general principles involved in the doctrine of ademption we quoted, with approval, language from 6 Page on Wills (Bowe-Parker Revision), Ademption, Sec. 54.1:

" 'In modern law the term ademption has two distinct meanings. It is used with reference to the act of the testator in paying to the legatee, in the lifetime of the testator, a legacy which the testator has given to the legatee by will, or in satisfying such legacy by giving, in place thereof, something of value. This is sometimes spoken of as ademption by satisfaction. . . . ' " (p. 491.)

If what was said in *Bush* and *Snyder* does not constitute a clear recognition of the doctrine of ademption by satisfaction, we do so now. We believe the similarity in the equitable principles underlying both ademption by extinction and satisfaction compels

recognition of the latter to avoid inconsistency. The satisfaction doctrine is recognized by a majority of English and American jurisdictions. (See 26 A.L.R. 2d, Anno. p. 9, and Later Case Service and Supplement.)

Appellees present two arguments against the recognition of ademption by satisfaction. First that it had not been recognized in any Kansas case and second that the doctrine of ademption has been abolished by statute.

While, as we have pointed out, the specific terms were not used in *Bush,* the language of the opinion, in effect, recognized the principles of ademption by satisfaction. In their statutory argument appellees rely on K. S. A. 59-611 which provides:

"Except as provided in K.S.A. 59-610, no will in writing shall be revoked or altered otherwise than by some other will in writing; or by some other writing of the testator declaring such revocation or alteration and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same by the testator himself or herself by another person in the testator's presence by his or her direction."

Appellees point out that prior to 1939 the predecessor of K. S. A. 59-611, G. S. 1935, 22-241, ended with the proviso:

". . . [B]ut nothing herein contained shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."

It is further pointed out that the 1939 revision omitted this proviso. Thus, appellees argue, this omission evinces a legislative intent to preclude application of the doctrine of ademption by satisfaction. The omission of the proviso is explained by the note following the statute—Judicial Council, 1939:

"Last sentence of G. S. 1935, 22-241, is omitted, as it is believed to be fully covered by 59-610 and the rules of ademption and lapse." (59-611)

This statement shows that the reason for the omission of the proviso was the addition of 59-611, which deals with the automatic revocation of a will by marriage, birth, adoption or divorce, and that the rules of ademption then in force by way of case law dispensed with any need for statutory provision in that regard.

Appellees' argument has been rejected by courts as well as text writers. The following appears in 96 C. J. S., Wills, Sec. 1178:

". . . The doctrine of satisfaction is not abrogated by statutory provisions that a will shall be construed to speak and take effect as of the time of the testator's

death, or that no act subsequent to execution, except revocation, shall prevent the operation of the will with respect to such estate or interest as the testator shall have power to dispose of by will at that time."(p. 1009.)

In Atkinson on Wills (2d Ed.), Satisfaction, Sec. 133, the author observes:

". . . There is no occasion to resort to the theory of revocation in order to justify the doctrine of ademption by satisfaction, and none of the statutory methods of revocation are necessary for satisfaction of a legacy. . . ." (p. 739.)

It is a fundamental rule in this jurisdiction that a will speaks from the date of the testator's death in the absence of a clear intention to the contrary. (*In re State of Snyder,* supra; and *In re Estate of Zimmerman,* 207 Kan. 354, 485 P. 2d 215.) In the case of ademption, the act of extinction or satisfaction is, of course, antecedent to the death of testator. We see no bar, in the language of 59-611, to the application of the doctrine of ademption by satisfaction where it is otherwise shown to be applicable.

In passing, we note that the Uniform Probate Code, which has not been adopted in Kansas, requires a direction in the will or by a collateral document written by the testator or an acknowledgement of satisfaction in writing by the legatee in order that a payment work an ademption (See 1 Uniform Probate Code Practice Manual, Sec. 2-612, pp. 153-154 ).

Authorities on the subject indicate that the intention of the testator at the time of the inter vivos gift is the heart of ademption by satisfaction. (6 Page on Wills [Bowe-Parker Revision], Ademption, Sec. 54.25, p. 282; 96 C. J. S., Wills, Sec. 1178, p. 1009.) The importance of intention, as related to ademption, is made clear in our opinion in the recent case of *In re Estate of Graham,* 216 Kan. 770, 533 P. 2d 1318. The *Graham* case dealt with ademption by extinction, the issue being whether a conveyance, by an attorney in fact for an incompetent testator's specifically devised real property worked an ademption. In the context presented on appeal we were confronted with the choice of applying the identity theory with respect to ademption by extinction or the intention theory. In holding the intention theory to be paramount in such a case, Mr. Justice Prager speaking for the court said:

" . . . We adopt this rule not only because of the fact that it represents the rule which is followed in the overwhelming majority of the jurisdictions in this country but also because we consider it the better reasoned rule and more in line

with our prior decisions which give supreme importance to the intention of a testator in determining how his property should be distributed on his death."(p. 778.)

We believe the intention of Esme at the time she made the inter vivos gift to Pittsburg is the critical issue at bar. In its decision the trial court emphasized that both the gift document and the decedent's will are clear and unambiguous. These rulings are irrelevant to the controlling issue of intention. A reading of the court's decision and its various evidentiary rulings during the course of the trial indicates the court may have viewed the action as one to construe a will or to determine whether either the will or gift document was ambiguous. Neither approach was determinative of the issue here. The fact that both instruments are clear and unambiguous does not proscribe ademption by satisfaction the determination of which is primarily controlled by intention.

The decision of the district court fails to meet the standards of K. S. A. 60-252(*a*) and Rule No. 165. The court's decision does not state the controlling facts or the legal principles controlling the decision. We cannot ascertain from the language of its ruling whether the court recognized the doctrine of ademption by satisfaction and found against appellants on the issue of intention or whether it ignored the doctrine and based its ruling on the premise that both instruments were clear and unambiguous. For this reason alone the case must be remanded. In this connection we held the requirements of the statute and rule to be mandatory in the recent case of *Mies v. Mies,* 217 Kan. 269, 535 P. 2d 432, and further held:

"The findings required by K. S. A. 60-252(*a*) should be sufficient to resolve the issues, and in addition they should be adequate to advise the parties, as well as the appellate court, of the reasons for the decision and the standards applied by the court which governed its determination and persuaded it to arrive at the decision. (Following, *Read v. Estate of Davis,* 213 Kan. 128, 515 P. 2d 1096, Syl. par. 2.)

"Where the findings and conclusions of the trial court are inadequate to permit meaningful appellate review, the appellate court has no alternative but to remand the case for new findings and conclusions. (Following, *Read v. Estate of Davis,* 213 Kan. 128, 515 P. 2d 1096, Syl. par. 3.)" (Syl. 2 and 3.)

In view of a retrial of this matter we deem it appropriate to consider recognized rules applicable to the application of the doctrine in the context of the record presented here. Ordinarily, the burden of proof as to the testator's intention falls on the party who claims that a payment operates as an ademption of a legacy.

(6 Page on Wills [Bowe-Parker Revision], Ademption, Sec. 54.26, p. 282.) A gift will not be treated as satisfaction when an actual intention that it should not so operate is sufficiently made to appear. Conversely, where an actual intention shows, by competent evidence, that a subsequent gift is to satisfy a legacy, such intention will be enforced. (96 C. J. S., Wills, Sec. 1178, p. 1009.) There are recognized presumptions in connection with intention which may arise from the evidence. One of which, and pertinent to this case, is a presumption of ademption where the specific purpose for which the legacy was given is satisfied by the testator himself. (96 C. J. S., Wills, Sec. 1178, p. 1010; 6 Page on Wills [Bowe-Parker Revision], Ademption, Sec. 54.31, p. 290.) However, where a presumption of an intention to adeem arises it is one of fact and not of law and may be rebutted by competent evidence. The question is one for the trier of facts. In the case at bar, the overall purpose (to provide scholarships for worthy or needy and deserving students) is spelled out in both of the instruments in question in almost identical language, although there is some difference in directions as to precisely how the funds are to be handled by the appellees. There is some conflicting testimony on this point that one document set out a scholarship "gift" fund, whereas the other spoke of a scholarship "loan" fund and that there was some difference in the administration of the two funds. On the other hand, Mr. Amos testified that the testatrix did not want or intend any material differences between the two documents. Appellees argue the differences are significant while appellants, on the other hand, contend the identity of purpose in the two instruments is clearly shown. This is a question to be determined by the trial court after hearing the testimony of the witnesses.

We turn next to appellants' claim of error with respect to the trial court's rulings on the admission of evidence. Appellants' first complaint concerns the trial court's refusal to permit Mr. Amos to testify concerning decedent's intention in making the inter vivos gift to Pittsburg. In sustaining an objection the court ruled that Mr. Amos "had already testified to this matter." Our review of the record reveals that this subject had not been explored during the testimony of this witness. Appellants also complain as to the exclusion of the testimony of various witnesses concerning the intention of decedent in making a new will after

the presentation of the inter vivos gift and that it contained no provision for George Tullis or Pittsburg. The trial court erred in both instances. The intention of a testator as to whether a gift should satisfy or adeem a legacy may be shown by extrinsic or parol evidence, including evidence of his conduct subsequent to the execution of the will. (96 C. J. S., Wills, Sec. 1178[a], p. 1012.) The rule and the underlying reason therefor is stated in 6 Page on Wills [Bowe-Parker Revision], Ademption, Sec. 54.27, p. 283, in these words:

> "In most cases testator's intention with reference to ademption does not appear upon the face of the will, and, if it does, it relates to the future, and it is possible that testator may change it. Accordingly, it is generally held that extrinsic evidence is admissible to show the intention which testator had when he made the payment in question. This includes parol evidence of testator's declarations, evidence of the surrounding facts and circumstances from which his intent may be inferred and evidence of testator's conduct. . . ."

There is some authority that evidence of declarations made long after the inter vivos payment is not admissible for the purpose of showing a testor's intention in making a gift. (*Will of Cramer,* 183 Wis. 525, 198 N. W. 386.) However, it should be noted that in *Cramer,* unlike the instant case, the only evidence sought to be introduced on the question of intent was manifested long after (eighteen months) the inter vivos gift and there were no accompanying or corroborating statements made by the testator contemporaneously with or prior to the gift. On the other hand, what we believe to be the better reasoned authorities allow evidence of such declarations even if made subsequent to the gift, the matter of time merely going to the weight to be accorded such evidence rather than its admissibility. Attempted alterations in the will, although insufficient as such, may be pertinent to show the testator's intention as to whether the gift is adeemed or satisfied. (96 C. J. S., Wills, Sec. 1178(a), p. 1012; and *Matter of Tallman,* 131 Misc. 863, 229 N.Y.S. 308.) Testimony that decedent made a new will, omitting the Tullis and Pittsburg bequests, shortly after she made the inter vivos gift is admissible to show her intention at the time of making the gift. The purpose of such testimony was not to revoke or replace the 1965 will. It is generally recognized that the attorney-client privilege does not prohibit an attorney from testifying about the execution of a will. The privilege does not apply to litigation between parties who

claim under the client after the death of the client. (8 Wigmore on Evidence [McNaughton Revision, 1961], Sec. 2314, p. 611; *Tanner v. Farmer,* 243 Or. 431, 414 P. 2d 340; 66 A. L. R. 2d, Anno. p. 1302.)

In the instant case, testimony of facts and declarations going to decedent's intention in making a new will and in explanation of why it was not executed, as well as testimony as to her intention in making the inter vivos gift, is all relative to the critical issue whether she intended to satisfy the legacy at the time she made the inter vivos gift.

For the foregoing reasons the judgment below is reversed and the cause is remanded with directions to grant a new trial on all issues.

OWSLEY, J., not participating.