(609 P.2d 232)
No. 50,391

IN THE MATTER OF THE ADOPTION OF BABY GIRL CHANCE, a minor.
Petition for review denied June 20, 1980.

Opinion filed April 11, 1980. 

*Maureen Scully,* of Kansas City, for the appellant.

*Terry L. Rees* and *Charles P. Fleming, Jr.,* of Shawnee Mission, for the appellees.

Before SWINEHART, P.J., REES and SPENCER, JJ.

SPENCER, J.: This is an appeal by the natural mother of Baby Girl Chance from a decree of adoption entered by the probate division of the District Court of Wyandotte County on July 28, 1978.

It is here asserted: (1) that the trial court erred in failing to make findings of fact and conclusions of law pursuant to K.S.A. 60-252(*a*) and Supreme Court Rule No. 165, 225 Kan. lxxii; (2) that the natural mother was deprived of a fair hearing before an impartial tribunal; and (3) that the trial court was without subject matter jurisdiction for the reason that the mother's consent to the adoption was not freely and voluntarily given and was not in proper form when it was executed.

Baby Girl Chance was born March 3, 1978. On March 6, 1978, the mother executed an instrument in writing entitled "Consent to Adoption," which she acknowledged before a notary public on March 7, 1978. The names of the adopting parents were not shown on the consent form at the time of the mother's signature and acknowledgment, but were inserted sometime later.

On March 7, 1978, the adopting parents filed their petition to adopt the child, together with the mother's consent, in the probate division of the District Court of Wyandotte County. On that date there was also filed in these proceedings the mother's affidavit in which she set forth the facts that she was the mother, the date and place of her birth, and the name of the father of the child, stating the father had denied paternity as well as any interest in what might happen to the child.

On April 7, 1978, the mother, then represented by counsel other than present counsel of record, filed her petition in the probate division to set aside her consent to the adoption, alleging it was not freely and voluntarily given; that by reason of the fact that she had not then attained the statutory age of majority she did not have the capacity to enter into such consent knowingly and freely; and that she had been advised by a doctor at the University of Kansas Medical Center that she would have a period of six weeks in which to revoke her consent to the adoption.

On May 3, 1978, the mother, through her then attorney of record, filed application for writ of habeas corpus, wherein she alleged facts substantially as related, and represented that her child was unlawfully restrained by Charles P. Fleming, Jr., who was then and is now counsel of record for the adopting parents and acknowledged as such in the course of those proceedings. That cause was assigned to the Honorable Harry G. Miller, Jr., Judge of Division No. 3 of the District Court of Wyandotte County, who issued an order dated May 3, 1978, on which a hearing was conducted on May 4, 1978. Our review of the transcript of that proceeding reveals the parties stipulated as to certain of the facts, and that appellant's counsel announced to the court:

"Now, we have agreed to submit this to the court for a habeas corpus hearing jointly, and I have joined Mr. Fleming, as the party who holds the child, which is probably incorrect, but I think by agreement that would be satisfactory between Mr. Fleming and myself.

"The reason we are doing that, of course, is that every week of delay in this particular case would be extremely harmful to either the people who Mr. Fleming represents or to my client. Now, I don't personally know their name, but that is the primary reason for bringing the action so quickly and requesting such a quick determination."

### Appellant's counsel also stated to the court:

"Your Honor, if it please the Court, the brief facts are as follows, and our source of contention requests, for this habeas corpus action, is that [the mother] was, in fact, pregnant. Prior to the pregnancy she discussed with Dr. Cameron as to the possibility of giving the child up for adoption. Considering [the mother's] financial plight at that time, her lack of education background and ability and the possibility that the child would be very well cared for by the adopting parents, which would certainly not be contested in this case, she did relinquish the custody and control of the child by signing an instrument basically known as a consent to the adoption.

"Our primary request and the reason for being here is that [the mother] was advised—we are maintaining she was advised by Dr. Cameron prior to the hearing—or prior to the consent—that for a six-week time period she had the opportunity to withdraw this consent and obtain the child back. At least, that is her understanding of this conversation.

"In addition, at the time the consent was entered into we are maintaining that [the mother] was a girl of age 17 who had—an unwed child who had just undergone childbirth three days prior to that time, was probably under medication and did not really have the knowledge to sign a consent or the ability to sign a consent at that time.

"The difficulty, we feel, of course, is that this is essentially codified under K.S.A. 59-2102, which the Court will have to review. Basically, maintains that the

consent must be given by the mother of an illegitimate child, which was done in this case, and majority would not have a bearing as to whether the consent may be given.

"But the difficulty, and what we have to prove, or the Court has to be satisfied, is that this consent was not freely and voluntarily given by [the mother], and as far as I understand it, that is really the only issue for the Court to decide, is whether the consent was freely and voluntarily given by [the mother].

"Other issues as to whether the adoptive parents are good people are not at issue. We would stipulate to that. There's no question as to that fact."

That matter proceeded to an evidentiary hearing and briefs were submitted by both parties. On May 11, 1978, judgment was rendered, in relevant part as follows:

"The matter is submitted to the Court on the testimony of [the mother], the deposition of Dr. William J. Cameron, and stipulations of counsel as follows:

"(a) Baby Girl Chance was born March 3, 1978 at the University of Kansas Medical Center.

"(b) The Consent to Adoption was signed on March 6, 1978, and acknowledged before a Notary Public in [the mother's] home on March 7, 1978.

"(c) That on March 7, 1978, the said Consent to Adoption was filed with the District Court, Probate Section, Wyandotte County, Kansas.

"(d) That throughout this period of time [the mother] was seventeen years of age.

"(e) That on February 27, 1978, [the mother] wrote a letter to the proposed adopting parents though they were unknown to her.

"(f) That the proposed adopting parents are suitable as adoptive parents.

"From the evidence, the Court finds as follows:

"1. That the Petitioner initiated the request for adoption several months prior to the child's birth.

"2. That she had discussed it with her mother, Dr. Cameron, and her own doctor and made her decision to allow the child to be adopted.

"3. That Dr. Cameron did not advise her that she could revoke her Consent at any time before the adoption was final, but said only, in substance, that the adopting parents would probably be on 'pins and needles,' until the adoption was final.

"4. That as late as March 20, 1978, she reaffirmed her Consent to Adoption.

"5. That the Petitioner's Consent to the Adoption, executed on March 6, 1978, was freely and voluntarily given, and was not the result of misunderstanding, fraud or coercion, and it was reaffirmed as late as March 20, 1978."

The record in the habeas corpus proceedings was offered and admitted in evidence in the adoption proceedings without objection and it now appears as a part of the record on appeal.

On June 2, 1978, present counsel of record for appellant entered her appearance in the adoption proceedings, and on June 6, 1978, filed an instrument entitled "Revocation of Consent to Adoption" and moved to dismiss the adoption proceedings for

lack of subject matter jurisdiction. An evidentiary hearing before the probate division on June 13, 1978, resulted in a letter decision under date of June 14 directed to counsel for both sides as follows:

"Having heard the testimony submitted and having read the written suggestions of counsel and having familiarized myself with the matters contained in the Habeas Corpus action, No. 78-C-1417, it is my finding that the consent to adoption was freely and voluntarily given by the mother who was nearly 18 years of age and the mother of a child born in 1976."

It was suggested by appellees at the hearing on June 13th that the issue of whether the mother's consent to adoption was freely and voluntarily given had been resolved in the habeas corpus proceedings and that principles of res judicata and collateral estoppel should apply to preclude relitigation of the same issue. The trial court did not adopt either theory and ordered the parties to proceed. Appellees did not appeal. It was, of course, necessary that a cross-appeal be perfected in order for appellees to obtain review of rulings adverse to them. See K.S.A. 60-2103(*h*); *Vaughn v. Murray,* 214 Kan. 456, Syl. ¶ 5, 521 P.2d 262 (1974).

Appellant directs our attention to K.S.A. 60-252(*a*) and Supreme Court Rule No. 165. She argues the trial court has not provided supporting findings of fact and conclusions of law upon which this court can base its review. For this reason, she asks that the cause be remanded with directions that the trial court make such findings and conclusions. K.S.A. 60-252(*a*) provides in relevant part:

"In all actions tried upon the facts without a jury . . . the judge shall find, and either orally or in writing state, the controlling facts."

Supreme Court Rule No. 165, 225 Kan. lxxii, provides in relevant part:

"In all contested matters submitted to a judge without a jury including motions for summary judgment, the judge shall state the controlling facts required by K.S.A. 60-252, and the legal principles controlling the decision."

It is well settled that the requirements of K.S.A. 60-252(*a*) and Supreme Court Rule No. 165 are in part for the benefit of the appellate court; and when the findings and conclusions of the trial court are not adequate to permit meaningful appellate review, this court has no alternative but to remand the case for new or additional findings and conclusions. See *Baker University v. K.S.C. of Pittsburg,* 222 Kan. 245, 564 P.2d 472 (1977); *Henrick-*

*son v. Drotts,* 219 Kan. 435, 548 P.2d 465 (1976); *Mies v. Mies,* 217 Kan. 269, 535 P.2d 432 (1975); *Martin v. Hinnen,* 3 Kan. App. 2d 106, 590 P.2d 589 (1979). See also *Celco, Inc. of America v. Davis Van Lines, Inc.,* 226 Kan. 366, 598 P.2d 188 (1979).

The only specific findings entered by the judge of the probate division are "that the consent to adoption was freely and voluntarily given by the mother who was nearly 18 years of age and the mother of a child born in 1976" and that the mother of the child "has agreed in writing to said adoption by the Petitioners." There is also the general finding in the decree of adoption that the allegations of the petition are true. There it was alleged that the mother had by her duly executed and acknowledged written instrument "freely and voluntarily consented to the adoption of the said child by these Petitioners." While the issue of whether the consent to adoption was freely and voluntarily given was the ultimate issue to be decided at the hearing on June 13, the identical issue had been presented in the habeas corpus proceedings wherein the district judge made findings of fact and conclusions of law clearly sufficient to satisfy the requirements of the statute and the rule. Although the judge of the probate division did not specifically adopt the findings of the court in the habeas corpus proceedings as his own, it is apparent he considered that record and entered his judgment, at least in part, on the basis of that evidence.

Appellant argues that no credence is to be given the habeas corpus proceedings as that court was without jurisdiction. This, it is argued, is because the adoption proceedings were then pending and the validity of the mother's consent to adoption was obviously an issue in those proceedings.

Since January 10, 1977, probate courts as they previously existed have been abolished and all matters then pending or thereafter commenced, which by their nature were deemed "in probate," are actions and proceedings in the district court of the county in which such court is located. K.S.A. 1979 Supp. 20-335. We recognize that custody and adoption proceedings are separate. *In re Nelson,* 202 Kan. 663, 667, 451 P.2d 173 (1969). However, it was the appellant who sought by means of habeas corpus a determination by another judge within the same jurisdiction of the validity of her consent to the adoption. It was the appellant who requested and was granted in that proceeding a prompt

hearing in order that there could be a "quick determination" of "the only issue for the Court to decide" of whether "the consent was freely and voluntarily given by [the mother]." Having done so and having acquiesced in the admission of the record of those proceedings as evidence in the adoption proceedings, such may not now be ignored. In view of what has transpired and the present state of the record on appeal, we find sufficient compliance with K.S.A. 60-252(a) and Supreme Court Rule No. 165.

It is next argued that appellant was deprived of a fair hearing before an impartial tribunal. The issues to be determined in this cause were factual in nature and obviously the court must be fair and impartial. See, *e.g., In re Estate of Millar,* 185 Kan. 510, 516, 345 P.2d 1033 (1959); *Harrison v. Harrison,* 48 Kan. 443, Syl., 29 Pac. 572 (1892). A judge has an ethical duty to be patient, dignified and courteous to litigants, lawyers, and others with whom he deals in his official capacity, and to accord to every person legally interested in a proceeding or his lawyer full right to be heard according to law. Supreme Court Rule No. 601, Canons 3 A (3) and (4), 225 Kan. cxx. See *In re Sortor,* 220 Kan. 177, 551 P.2d 1255 (1976).

While the extracted portions of the proceedings as reflected in appellant's brief indicate that perhaps the trial judge in the probate division was somewhat abrupt and perhaps not as patient as he might have been in some of his comments and rulings, our review of the entire record on appeal reveals that she has been granted a full and fair hearing on all of the issues presented.

It is urged that it was error for the court to uphold the validity of the mother's consent to the adoption. In this connection appellant argues the court did not have jurisdiction over the subject matter of this proceeding pursuant to K.S.A. 59-2102, pointing out that adoption statutes are to be strictly construed in favor of maintaining the rights of the natural parents in controversies involving termination of the parent-child relation (*In re Sharp,* 197 Kan. 502, 504, 419 P.2d 812 [1966]); and that consent by the natural parents to the adoption of their child where required by statute is regarded as an essential requisite to jurisdiction of the court to render a valid decree of adoption. *In re Marsolf,* 200 Kan. 128, 434 P.2d 1010 (1967). She summarizes her attack on the jurisdiction of the court by issues presented as follows: (1) She did not knowingly and intentionally relinquish

her child; (2) she did not intentionally consent because she did not understand the legal finality of her act; and (3) she did not knowingly consent because she was never informed of the legal dimensions of her act.

To be free and voluntary, a consent must be to all the legal consequences of the adoption with an understanding of the meaning and effect thereof. *Bilderback v. Clark,* 106 Kan. 737, 742, 189 Pac. 977 (1920); 2 C.J.S., Adoption of Persons § 68 (b), p. 494; 2 Am. Jur. 2d, Adoption § 44, p. 895. Whether a consent to adoption was freely and voluntarily given or was tainted by fraud, duress, undue influence, mistake or lack of understanding necessarily depends on the facts and circumstances of each case. As such, these issues are to be determined by the trier of fact who has the best opportunity to weigh the evidence and test the credibility of witnesses. The evidence as reflected in this record clearly supports findings made in the habeas corpus proceedings and the ultimate finding by the judge of the probate division that the mother's consent to the adoption of her newly born child was freely and voluntarily given. Such will not be disturbed on appellate review. See *Koerner v. Custom Components, Inc.,* 4 Kan. App. 2d 113, Syl. ¶ 3, 603 P.2d 628 (1979). It is not the function of this court to weigh conflicting evidence or redetermine questions of fact and our only concern is with evidence which supports the trial court's findings and not with evidence which might have supported contrary findings. *Addis v. Bernardin, Inc.,* 226 Kan. 241, Syl. ¶ 2, 597 P.2d 250 (1979); *Dick King Insurance, Inc. v. McBratney,* 225 Kan. 675, 676, 594 P.2d 175 (1979).

Finally, appellant contends her consent was invalid because the consent form did not contain the names of the adopting parents when she signed and acknowledged that instrument.

There is divided authority as to the validity of "general" or "blanket" consents and there are persuasive arguments for and against. Professor Marvin E. Larson considered this problem in his article on adoption procedures in Kansas and concluded in part:

"It would appear that the general intent of the legislature was to limit the consent of a parent to a particular adoption, since the legislature has provided specific limitations and specific methods for doing that which otherwise could be done with a general consent. The general consent is the greatest single tool of the 'gray' or 'black market' operator in babies. It seems very doubtful that the legislature

intended that any person or unauthorized agency might place children for adoption by obtaining a general consent from the mother or parents to be subsequently delivered to the adoptive parents when the legislature has so carefully set out the procedure for the placement of children by authorized and state agencies, and for the procedure to be followed by parents in relinquishing children." Larson, *Adoption Procedure in Kansas,* 19 J.B.A.K. 332, 340 (1951).

See also *In re Adoption of a Baby Girl,* 248 Iowa 619, 80 N.W.2d 500 (1957); *Las Vegas Sun v. Franklin,* 74 Nev. 282, 329 P.2d 867 (1958); *In re Holder,* 218 N.C. 136, 10 S.E.2d 620 (1940).

Although we find Professor Larson's analysis to be persuasive, we are not convinced that such is the law of this state. The purpose of our adoption statutes as applied to minor children is to provide for the welfare of such children, and the statutes should be liberally construed to effect that purpose. While natural parents may specify the person or persons they wish to adopt their child, we recognize that regardless of the personal desires and expressed wishes of the natural parents, it is the court which in the final analysis must make a judgment as to whether any proposed adoption is to be allowed. K.S.A. 59-2278. We believe it to be common knowledge, particularly among the bench and practicing bar of this state, that at least as often as not decrees of adoption are entered under circumstances where persons whose consent is required remain unaware of the identity of the adopting parents. We believe this practice to be an outgrowth of a generally recognized policy which so far considers it to be in furtherance of the best interests and the future well-being of the child that he or she be reared in an atmosphere as near as possible to that of a child born to the adopting parents. In support of this position, see *In re Adoption of a Minor Child,* 127 F. Supp. 256 (D.D.C. 1954); *Johnson v. Adoption of Johnson,* 149 Ind. App. 611, 274 N.E.2d 411 (1971); *Barwin v. Reidy,* 62 N.M. 183, 307 P.2d 175 (1957); *McKinney v. Weeks,* 130 So. 2d 310 (Fla. D.C. App. 1961); *In re Adoption of Jackson,* 89 Wash. 2d 945, 578 P.2d 33 (1978).

It is our opinion that the language of K.S.A. 59-2102 which provides "consent must be given to such adoption" is not to be construed as a requirement that consent to an adoption must be given to specifically named persons. The record before us does not indicate that the mother at any time inquired or expressed any desire to learn the identity of the persons who were to adopt her child. Absent such, we conclude that the completion of the blanks

in the consent to adoption form by insertion of the names of the adopting parents after that instrument had been executed and acknowledged by appellant did not invalidate her consent or deprive the court of jurisdiction.

Affirmed.