No. 47,203

EDWARD L. and LILLIAN C. CLITHERO, FLOYD Z. and MARY E. KELLEY, WERNER F. and ROSALIE G. FRIESS and WILLIAM N. and DELORES L. PURSLEY, *Appellants,* v. KEY SECURITIES, INC., *Appellee.*

(520 P. 2d 1225)

Opinion filed April 6, 1974.

*Everett C. Fettis,* of Fettis & Arabia, of Wichita, argued the cause, and *Gerald E. Wells,* of the same firm, was with him on the brief for the appellants.

*Marol E. Goering,* of Wichita, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by Key Securities, Inc. (plaintiff-appellee) against Edward L. and Lillian C. Clithero, Floyd Z. and Mary E. Kelley, Werner F. and Rosalie G. Friess and William N. and Delores L. Pursley (defendants-appellants) for the default of Mid-Continent Securities, Inc., on a $13,500.00 promissory note. The action is predicated upon subordination agreements whereby the defendants pledged various securities to Mid-Continent Securities, Inc., for the benefit of its creditors.

The case was tried to the court without a jury upon issues joined by the pleadings of the parties, and the trial court, without finding or stating the controlling facts, entered judgment for the plaintiffs.

The controlling issue is whether the trial court was required to comply with the provisions of K. S. A. 60-252.

On November 25, 1970, Mid-Continent Securities, Inc., Trans-Financial Corporation, and Key Securities, Inc., executed a letter agreement wherein Mid-Continent agreed to purchase certain office furniture and equipment from Key Securities for the amount of $13,500.00. The contract of sale was secured by a promissory note and chattel mortgage payable in one year. Mid-Continent further agreed with Key Securities that Mid-Continent would assume the

remainder of Key Securities' office lease commencing on December 1, 1970. Trans-Financial Corporation granted Key Securities the option of converting the promissory note of Mid-Continent into Trans-Financial stock at one-half the public offering price and further granted Key Securities a three year option to purchase additional shares of Trans-Financial stock for one-third the public offering price. This agreement was executed by Gary L. Blevins on behalf of Mid-Continent Securities, Inc., and Trans-Financial Corporation. B. G. Whorton executed the agreement on behalf of Key Securities, Inc.

It appears from the record that Trans-Financial Corporation is the parent company of Mid-Continent Securities, Inc.

On December 1, 1970, three additional instruments were executed by the parties to the earlier letter agreement. The first of these, a bill of sale and assignment of the office furniture and equipment, was executed by B. G. Whorton on behalf of Key Securities, Inc.

The second instrument, a security agreement-promissory note was executed by Gary L. Blevins on behalf of Mid-Continent Securities, Inc. This instrument provided that Mid-Continent would pay Key Securities $13,500.00 plus interest on or before December 1, 1971, as consideration for the office furniture and equipment. It further provided that Key Securities was granted a security interest in the furniture and equipment.

The third instrument was an agreement between Mid-Continent Securities, Inc., Trans-Financial Corporation, and Key Securities, Inc. Gary L. Blevins executed this agreement on behalf of Mid-Continent Securities, Inc., and Trans-Financial Corporation. B. G. Whorton executed the contract on behalf of Key Securities, Inc. This agreement formulated and finalized the promises and agreements between the parties as exhibited in the letter agreement of November 25, 1970.

In this third instrument Mid-Continent and Trans-Financial represented and warranted to Key Securities, Inc., that "Mid-Continent and Trans-Financial are corporations duly organized and validly existing in good standing under the laws of the States of Kansas and Delaware, respectively."

On December 7, 1970, Mid-Continent Securities, Inc., entered into two subordination agreements, one with William and Delores Pursley, and the other with Werner and Rosalie Friess. In these

agreements the Pursleys and the Friesses agreed to subordinate certain securities owned by them to Mid-Continent Securities, Inc. The signatures of the Pursleys and the Friesses to their respective subordinated loan agreements were procured by Mid-Continent Securities, Inc., through the efforts of one J. J. Carson.

On December 8, 1970, Mid-Continent Securities, Inc., entered into a subordination agreement with Edward and Lillian Clithero whereby Mr. and Mrs. Clithero agreed to subordinate certain securities owned by them to Mid-Continent. The signatures of Mr. and Mrs. Clithero to the subordinated loan agreement was procured by Mid-Continent Securities, Inc., through the efforts of J. J. Carson.

On December 23, 1970, Mid-Continent Securities, Inc., entered into a subordination agreement with Floyd Z. Kelley whereby Mr. Kelley agreed to subordinate certain securities owned by him to Mid-Continent. The signature of Mr. Kelley to the subordinated loan agreement was procured by Mid-Continent Securities, Inc., through the efforts of J. J. Carson.

During the solicitation of each of the four subordinated loan agreements, J. J. Carson represented to the lenders, *i. e.*, the appellants:

1. That the subordinated loans were for the express purpose of meeting the net capital requirements of a new security broker-dealership which was seeking a license from the Kansas Securities Commissioner;

2. That the corporation to which the subordinated loans were made, *i. e.*, Mid-Continent Securities, Inc., had no assets and no existing liabilities; and

3. That the lenders, *i. e.*, the appellants, would have no liability under the subordinated loan agreements unless and until a new broker-dealership was formed.

In or around December 1970 or January 1971, an official hearing was held by the Kansas Securities Commissioner on the application of Mid-Continent Securities, Inc., for a security broker-dealership. At the hearing the commissioner ruled:

1. That the subordination agreements were themselves securities,

2. That the subordination agreements had been illegally solicited, and

3. That the subordination agreements were not marketable and, thus, could not be used as net capital.

Because of this the application of Mid-Continent was withdrawn and the subordinated securities were returned to the lenders by direction of the commissioner. From that point on Mid-Continent and the lenders mutually considered the agreements to be cancelled.

On December 1, 1971, the promissory note of Mid-Continent Securities, Inc., to Key Securities, Inc., became due and owing. B. G. Whorton contacted Donald Alldritt, president of Mid-Continent, and demanded payment. Alldritt assured Whorton the note would be paid.

On or about December 22, 1971, a fire broke out in the office suite wherein the furniture and fixtures, which were the subject of the promissory note, were located. As a result of the fire the furniture and fixtures were destroyed.

On January 25, 1972, Key Securities, Inc., commenced this action against the appellants. The case was heard on July 20, 1972, in the district court of Sedgwick County, Kansas, Division 1, before Judge William Kandt. After reviewing the evidence, arguments, and briefs of counsels, the trial court ruled that Key Securities, Inc., could recover from the appellants based upon the subordinated loan agreements and so entered judgment for the appellee, Key Securities.

Appeal has been duly perfected from a denial of the appellants' post trial motions, and the judgment rendered in the trial court.

While the types and amounts of the securities pledged varied with each of the four subordination agreements which are the subject of this action, the same forms were used in each. These agreements, with the names, dates and amounts deleted read as follows:

"On This Day, . . . party of the first part and Mid-Continent Securities, Incorporated, a Kansas corporation, party of the second part, agree as follows:

"(1) On this day, party of the first part has loaned to party of the second part securities and/or cash described on the attached Exhibit A, such securities and/or cash in the sum of . . . such loan bearing interest at the rate of eight & one half percent (8½%) per annum, with principal payable to the order of party of the first part.

"(2) That any right that party of the first part shall have to demand or receive payment or return of the securities and/or cash loaned, as hereinabove set forth, is hereby subordinated to the claims of all present and future general creditors of party of the first part. Party of the first part also agrees to subordinate not only the principal amount of this loan but also any interest thereon that becomes due and is unpaid.

"(3) That this agreement evidence hereby is not subject to cancellation at the will of either party hereto and that this agreement is for a term of thirteen (13) months from the date hereof.

"(4) That this agreement shall not be terminated, rescinded or modified by mutual consent or otherwise, if the effect thereof would be to make this agreement inconsistent with the conditions of either Rule 15c3-1 of the Rules and Regulations under the Securities Exchange Act of 1934, or Article 81-3 of the Regulations of the Securities Commissioner of the State of Kansas or if the effect thereof would be to reduce the net capital of Mid-Continent Securities, Incorporated, below the amount required by said Rule.

"(5) That no default in the payment of interest or in the performance of any other covenant or condition by Mid-Continent Securites, Incorporated, shall have the effect of accelerating the maturity of the indebtedness.

"(6) Party of the first part further acknowledges the securities and/or cash that party of the first part has loaned to party of the second part, under this agreement, and that a receipt for same and a letter have been received by party of the first part and that it is so noted on the receipt that such are being loaned by party of the first part to party of the second part under that agreement and conditions of this Subordination Agreement.

"(7) That the securities and/or cash loaned to Mid-Continent Securities, Incorporated, pursuant to the provisions of this agreement may be used and dealt with by Mid-Continent Securities, Incorporated, as part of its capital and shall be subject to the risks of the business of said Mid-Continent Securities, Incorporated.

"EXECUTED THIS . . . day of December, 1970, and this agreement shall thereby be binding and enforceable upon part of the first part, his or its creditors, heirs, executors, administrators and assigns."

The appellants assert, among other points, that the trial court erred because its decision is contrary to the weight of the evidence presented at the trial.

Most of the appellants' brief is focused upon an attempt to convince this court it should determine the controlling facts in the case. While the record consists of 86 pages, less than four pages are devoted to the testimony of the various witnesses.

B. G. Whorton, president of Key-Securities, Inc., a broker-dealer, testified he sold office equipment to Mid-Continent Securities, headed by Don Alldritt, which was the only Mid-Continent Securities Company he knew, for a price of $13,500.00. He said he always thought he was dealing with the old Mid-Continent headed by Alldritt, and was never aware that a new corporation called Mid-Continent Securities, Inc., was formed which never obtained a license as a broker-dealer. Further in cross-examination Mr. Whorton again stated, as far as he was concerned, he was dealing with the old corporation.

An auditor by the name of Galen Gose testified that he conducted an audit of Mid-Continent Securities, Inc., as of December 29, 1970. The audit showed no furniture among the assets and no debts to Key-Securities. The information furnished to the auditor was furnished by Don Alldritt. There was a suggestion to the auditor that the furniture would be subsequently transferred to the company if the deal went through. A reading of his testimony shows that he considered Mid-Continent Securities, Inc., a shell corporation seeking to be licensed as a broker-dealer.

Don Alldritt's testimony indicates that both he and Mr. Whorton considered the original contract to be between the old corporation and the plaintiff, and that the new corporation would or might assume the obligation. Alldritt further testified that either in December 1970 or January 1971, the subordinated securities were returned to the subordinate holders at the direction of the Kansas Securities Commissioner's office. He testified this action terminated the subordination agreements.

J. J. Carson testified that he was the agent of Trans-Financial Corporation, and that he solicited and obtained the subordination agreements involved in this lawsuit. Mr. Carson's testimony was consistent with the testimony of the appellants heretofore related in the statement of facts. Mr. Carson said he first learned of the promissory note in question when this lawsuit came about.

Much of the testimony in the record concerning the Kansas Securities Commissioner and his action with respect to the subordinated stock is hearsay.

A foundation fact necessary to determine this lawsuit is whether there were two corporations named Mid-Continent Securities, Inc. And, if so, whether the note in question was given by the old Mid-Continent or the new one. It would also be necessary to determine whether the appellants entered into their subordination agreements with the old or the new company.

K. S. A. 60-252 provides in part as follows:

"Findings by the court. (*a*) *Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the judge shall find, and either orally or in writing shall state, the controlling facts, and judgment shall be entered pursuant to section 60-258; . . ."

Absent the foregoing statute, the trial court's judgment would inferentially carry the prerequisite findings of fact in favor of the appellee.

In *Andrews v. Board of County Commissioners*, 207 Kan. 548, 485 P. 2d 1260, this court said:

"The findings required by K. S. A. 60-252 (a) should be sufficient to resolve the issues, and in addition they should be adequate to advise the parties, as well as the appellate court, of the reasons for the decision and the standards applied by the court which governed its determination and persuaded it to arrive at the decision. These requirements are apparent in the statute itself.

"The purpose of the requirements in the statute is similar to the purpose for findings by administrative agencies. See *Kansas Public Service Co. v. State Corporation Commission*, 199 Kan. 736, 433 P. 2d 572; and *Central Kansas Power Co. v. State Corporation Commission*, 206 Kan. 670, 482 P. 2d 1.″ (pp. 555, 556.)

The provisions in 60-252 (a), *supra*, were held to be mandatory, in *Duffin v. Patrick*, 212 Kan. 772, 512 P. 2d 442, where the court held:

"In civil actions tried to the court the rules requiring expression of controlling findings of fact (K. S. A. 60-252 [a]) and controlling principles of law (Rule No. 116, 209 Kan. xxxviii) are designed as an aid to the integrity of the decision. They are mandatory and should be fairly observed by the trial judge.″ (p. 772, Syl. ¶ 2.)

Similarly in *Froelich v. Adair*, 213 Kan. 357, 516 P. 2d 993, this court reversed where the trial court failed to make findings as to the controlling facts, under the circumstances in the case, because they were necessary to a determination of the appeal.

Failure to make findings as to the controlling facts under the circumstances in this case preclude review, because they are necessary to a determination of the appeal.

The judgment of the lower court is reversed and the case is remanded for a new trial.