(640 P.2d 1294)
No. 52,805

In the Interest of LaRonda Lett and Terrance D. Jackson,
Children Under Age of 18 Years.

Petition for review denied April 14, 1982.

Opinion filed February 25, 1982.

*R. Scott McQuin* and *Richard L. Helms,* of Parsons, for the appellants.

*Charles Scott Gray,* county attorney, *Fred W. Johnson,* assistant county attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before ABBOTT, P.J., REES and SWINEHART, JJ.

SWINEHART, J.: This is an appeal by Ronald and Diane Lett from the judgment of the District Court of Labette County severing the parental rights of Ronald Lett to his daughter LaRonda Lett, and Diane Lett's parental rights to her children LaRonda Lett and Terrance Jackson.

Terrance Jackson, born March 23, 1976, is the illegitimate child of Diane Lett and Charles Lamb. LaRonda Lett, born August 13, 1978, is the child of Diane and Ronald Lett, who were married August 11, 1978.

On December 5, 1978, LaRonda was found to be a deprived child pursuant to K.S.A. 1980 Supp. 38-802(*g*)(3), on the basis of evidence to the effect that Ronald Lett had physically abused the child on November 3, 1978, when she was three months old. The evidence at that hearing indicated that the child had been severely beaten. Ronald admitted to beating LaRonda because of anger and self-pity, and stated that he was getting help for his mental problems. LaRonda was born with a physical birth defect which affected both feet and the hips, and prevents her from being very mobile. Upon finding that LaRonda was deprived, the trial court ordered that she remain in the care, custody and control of the Kansas Department of Social and Rehabilitation Services, and that should the child be placed with Diane Lett, the natural mother, the trial court was to be notified immediately if Ronald Lett resumed living with Diane. The court further ordered both parents to participate in any counseling or parenting education classes that the SRS deemed beneficial.

LaRonda was subsequently placed back in Diane Lett's home by the SRS under its supervision. The SRS urged Diane to obtain

independent living quarters, enroll Terrance in Head Start, complete the STEP parenting program, prepare a budget she could live within, and improve her housekeeping skills. During the following two years, Diane completed the STEP program after considerable difficulty and reluctance, and she obtained independent living quarters. She failed, however, at adhering to a budget, enrolling Terrance in Head Start, and improving her housekeeping.

Shortly after the December 5, 1978, determination that LaRonda was a deprived child, Ronald assaulted a man and was thereafter voluntarily admitted into the Osawatomie State Hospital where he received treatment for his inability to control his temper. Ronald was released from Osawatomie in April of 1979, and returned to Parsons where the SRS asked Ronald to seek marriage counseling or more, if needed. Ronald then started treatment with Dr. Jack Martin, a psychologist. He continued treatment with Dr. Martin through May of 1979, a period of two months, then dropped out of contact. He next visited Dr. Martin twice in October of 1979 after two violent episodes with Diane. The evidence reveals that in the first episode, Ronald hid in Diane's home and confronted her when she returned home from a Jehovah Witnesses' meeting. On the second occasion, Ronald took a stick and broke out a window, entered Diane's home and cornered her and Terrance. Ronald knocked Terrance out of Diane's arms and chased Diane outside. Ronald then proceeded to kick her in the stomach. Criminal charges were filed and Ronald spent three months in jail as a result of this incident. He subsequently resumed treatment with Dr. Martin in March of 1980, but discontinued the visits soon thereafter, in May of 1980.

On October 14, 1980, a petition was filed by the Labette County Attorney alleging Terrance Jackson to be a deprived child and praying for the severance of parental rights of Diane Lett and Charles Lamb. On November 3, 1980, an amended petition was filed on the same grounds, adding LaRonda Lett and her father Ronald Lett.

Hearings were held on the amended petition on November 17, November 25, and December 3, 1980. On December 4, 1980, the trial court found all three parents unfit and severed their parental rights. The children were committed to the custody of the SRS which then placed them in a foster home where they have

remained since. Diane and Ronald Lett appeal the trial court's decision.

The Letts' first contention of error is that the trial court's findings and conclusions are inadequate to permit meaningful review. After tracing the procedural history of this action in its journal entry, the trial court concluded:

"Now on this 4th day of December, 1980, the above entitled matter comes on for final ruling on the issue of severance of parental rights.

"The court finds and adjudges the putative father of Terrance Jackson, Charles Lamb, the natural father of Laronda [*sic*] Lett, Ronald Lett and the natural mother, Diane Lett, unfit persons to have the custody of the said deprived children, and are hereby adjudged as such."

The Letts contend that the trial court's findings and conclusions are inadequate for two reasons. First, the trial court never specifically found the children to be deprived; it just refers to them as "said deprived children." And second, the Letts contend that the findings are too sparse and incomplete.

Supreme Court Rule No. 165, 228 Kan. lxxxi, provides in part:

"In all contested matters submitted to a judge without a jury including motions for summary judgment, the judge *shall* state the controlling facts required by K.S.A. 60-252, and the legal principles controlling the decision." (Emphasis supplied.)

It is readily apparent from the journal entry that the trial court in the present case did not explicitly comply with the above rule. The trial court failed to set out the facts which would support a finding of "deprived" and failed to state the additional acts of parental neglect which were the bases of the finding of unfitness which resulted in the parental severance. Appellants, however, did not raise this issue at the trial court level. In *Burch v. Dodge*, 4 Kan. App. 2d 503, Syl. ¶ 2, 608 P.2d 1032 (1980), this court held:

"A litigant must object to inadequate findings of fact and conclusions of law at the trial level so as to give the trial court an opportunity to correct them, or an appellate court may presume the trial court found all the facts necessary to support the judgment."

The court went on, however, to hold at Syl. ¶ 3:

"The requirements of K.S.A. 60-252 and Supreme Court Rule No. 165 (225 Kan. lxxii) are in part for benefit of the appellate courts in facilitating appellate review; and when the record on review will not support a presumption that the trial court found all the facts necessary to support the judgment, the case will be remanded for additional findings and conclusions even though none of the parties objected either in the trial court or in this court."

See also *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, Syl. ¶ 2, 598 P.2d 188 (1979):

"In the absence of an objection first made in the trial court, omissions in findings will not be fatal to a judgment since the trial court is presumed to have found all of the facts in issue necessary to support the judgment."

Since the trial court did not make adequate findings and conclusions, it is this court's function in the present case to review the record to see whether it supports a presumption that the trial court found all the facts necessary to support the judgment. *Burch v. Dodge*, 4 Kan. App. 2d 503.

A review of the record in the present case (which commenced with the original deprived hearing for LaRonda on December 5, 1978, and continued until the final hearing herein in December of 1980), reveals that the record supports a presumption that the trial court found all the facts necessary to support its judgment. Clear and convincing evidence was presented which supports a finding that Diane Lett was an unfit parent. The testimony of the social worker for the SRS assigned to oversee the Lett case was based on 108 visits made to the Lett home and indicates that Diane simply made little effort to, or was not sincerely interested in fulfilling her SRS agreement which had as its ultimate goal the improvement of Diane's ability to provide for her children in a fashion which would at least meet society's bare minimum standards of care and supervision.

The record further shows that the testimony was clear and uncontroverted concerning Charles Lamb, Terrance's natural father. The record indicates that for more than three years he had failed totally in every respect to provide Terrance with parental control, care, subsistence and education. This evidence as to Charles Lamb not only supports the finding of his unfitness, but also is a factual matter which would support a finding that his individual neglect caused this child to be deprived within the meaning of K.S.A. 1980 Supp. 38-802.

The record also supports a presumption that the trial court found all the facts necessary to support its holding that Ronald Lett was an unfit parent. Ronald contends that the trial court's finding that he was an unfit parent is not supported by clear and convincing evidence, and therefore the trial court erred in severing his parental rights to LaRonda. Diane Lett does not challenge the sufficiency of the evidence presented concerning her unfit-

ness. In reviewing the evidence, the appellate court will consider the evidence in the light most favorable to the party who prevailed at the trial court level. *In re Bachelor,* 211 Kan. 879, 508 P.2d 862 (1973).

Any consideration of Ronald's fitness to parent LaRonda, a severely handicapped infant, should start back in December of 1978, when the trial court determined, and Ronald admitted, that he physically abused LaRonda. The evidence reveals that Ronald had battered three-month-old LaRonda in such a fashion that when Diane discovered the child, LaRonda's head was severely swollen and she was scratched, bruised and bloody. Ronald then defied court orders and the directions of the SRS not to make unsupervised family visits, and the results were the physical attacks on Diane and Terrance by Ronald. These incidents occurred after Ronald had spent time in the Osawatomie State Hospital after having attacked a man in Parsons. Ronald's inconsistent participation in Dr. Martin's therapy program has already been outlined above. Ronald claims to be in better shape now and better able to control his temper, but when on direct examination he was asked whether he had been able to control his temper since he quit taking the medication which was prescribed to enable him to control his temper, he responded: "A little bit, but not much." Later when asked, "Do you feel, Mr. Lett, that you can control your temper now?" Ronald responded: "That's not so easy for me to say . . . I don't want to lose my control on LaRonda and Terrance; but so far I have not lost my temper." Ronald also testified that he considered his temper still his "major problem." When the children do things to aggravate him, he testified that he goes outside and beats his head against a tree to get all the anger out of his system and then he walks around the block a couple of times, and he feels in control when he returns. The court also heard testimony concerning his poor money management and the fact that while he lived with Diane against court order, he allowed the house to be filthy and infested with cockroaches, rodents and other vermin.

From this testimony we find that the trial court had clear and convincing evidence to find that Ronald was an unfit parent and unable to take care of LaRonda.

The record also supports a presumption that the trial court made the necessary findings concerning the children's deprived

status. While the trial court did not specifically find that Terrance was deprived, it did refer to the children as "said deprived children." The court in an earlier proceeding had already found LaRonda to be deprived based on physical abuse. The trial court heard the testimony of Dr. Jack Martin who stated that if things remained as they were, the children would not reach their full potential. Dr. Martin also classified Terrance as a disadvantaged child. The evidence reveals that the children were often left unsupervised, were inappropriately clothed at times and were poorly disciplined. The situation showed little improvement from the first deprived child hearing in 1978, and the impending birth of Diane's third child would undoubtedly not improve the status of the other two children.

While it is unfortunate that the trial court failed to enter findings of fact and conclusions of law as required by Supreme Court Rule No. 165, 228 Kan. lxxxi, we find that the record supports a presumption that the trial court made the necessary findings to support its judgment. *Burch v. Dodge,* 4 Kan. App. 2d 503.

The Letts also contend that the trial court erred in not exploring alternatives before severing parental rights. Appellants cite to *In re Atwood,* 2 Kan. App. 2d 680, 587 P.2d 1 (1978), for the proposition that the trial court must find that under no reasonable circumstance can the welfare of the child be served by a continuation of the parent-child relationship and the trial court must explore and specifically eliminate alternative remedies before imposing the drastic remedy of parental severance. In *In re Brooks,* 228 Kan. 541, 550-551, 618 P.2d 814 (1980), the court modified the least restrictive alternative doctrine as was set out in *Atwood:*

"Without expressly so stating, the court in *Atwood* acknowledged the doctrine of the least restrictive alternative and judicially construes it into the statute. We approve the cited language of *Atwood* except for the following sentence: 'This test requires the court to explore and specifically eliminate alternative remedies before imposing the drastic remedy of parental severance.' In many areas of the state there are dozens of agencies and programs designed to assist families in resolving their problems. To require a court specifically to explore, consider and reject each such program prior to termination is unrealistic and could be disastrous. Certainly if a particular program is proposed as an alternative the court should give careful consideration to the proposal. Most of the programs have much in common and to be successful in any of these programs parents must cooperate with the agency,

must keep appointments, must have a sincere desire to improve their family life, and must be willing to accept counseling.

"We conclude the better test to be: The court should carefully consider any particular alternative remedy proposed by an interested party in the case, and if rejected the court should state its reasons for such rejection. The drastic remedy of termination of parental rights should not be utilized unless the court is satisfied there is no realistic alternative and so finds."

In the present case, no less restrictive alternative was proposed to the trial court, so no rejection of the alternatives was required. We note, however, that several alternative solutions were actually tried before the severance hearing, and failed. The parties had been working closely with SRS and proffered counselors for the two years subsequent to LaRonda's deprived child hearing. Testimony based on over one hundred home visits was heard to the effect that the SRS did everything possible to remedy the situation and had limited success. We hold that the trial court did not err in severing appellants' parental rights.

Affirmed.

ABBOTT, J., concurring: Having authored *Burch v. Dodge,* 4 Kan. App.2d 503, 608 P.2d 1032 (1980), I feel an obligation to express additional rationale for that decision. This court is duty-bound to follow Supreme Court decisions unless a valid reason exists to believe the Supreme Court would reach a different result if it were to reconsider the issue. Less than nine months before *Burch* was argued, the Supreme Court filed *Celco, Inc. of America v. Davis Van Lines, Inc.,* 226 Kan. 366, 598 P.2d 188 (1979). Although it has been argued by some members of this court that the holding in question is *dicta,* the disputed language is contained in the law of the case at syllabus ¶ 2, which states:

"In the absence of an objection first made in the trial court, omissions will not be fatal to a judgment since the trial court is presumed to have found all of the facts in issue necessary to support the judgment."

I was troubled at first with that part of the *Celco* decision, because it did appear to be in conflict with Supreme Court Rule 165 (228 Kan. lxxxi). As I analyzed the problem, however, I became fond of the end result and stated in *Burch* at 507:

"We recognize that the Supreme Court in *Celco, Inc. of America v. Davis Van Lines, Inc.,* 226 Kan. 366, 369, 598 P.2d 188 (1979), appears to have held that a litigant must object to inadequate findings and conclusions at the trial level, which gives the trial court an opportunity to correct them; otherwise, an appellate court may presume the trial court found all of the facts necessary to support the

judgment. This appears to be a good rule, as it allows a trial court an opportunity to correct a mistake by granting a new trial; and in the event a mistake was not made, the trial court speeds up the judicial process by supplying additional findings and conclusions of law so that appellate review can be had without the delay of remanding, which results in unnecessary expense to the litigants and wastes judicial time. However, findings are also for the benefit of the appellate courts, as the Supreme Court pointed out in *Henrickson v. Drotts,* 219 Kan. 435, 441, 548 P.2d 465 (1976), where it stated:

" 'The requirements of K.S.A. 60-252 and Rule No. 116 [now Rule No. 165, 225 Kan. lxxii] of this court are for the benefit of this court in facilitating appellate review. Waiver of such requirements is not within the rights of the parties or the authority of the court below.'

"The record in this case is not consistent with any findings we could presume the trial court made, and thus in the absence of adequate findings of fact and conclusions of law, we vacate the judgment insofar as it surcharges the trustee and remand the case for new findings. [Cites omitted.]"

Our trial courts are extremely busy and there is no relief in sight. The work load in trial courts in all probability will continue to increase, and judicial time will become even more precious to an already overextended trial bench. Having now had the opportunity to participate in more than 1,000 appellate decisions, I am satisfied that in most instances the findings of fact from the trial bench meet the spirit of Supreme Court Rule 165. There are, of course, glaring exceptions to the foregoing statement. In nearly all cases, the findings of fact give the parties adequate insight into how a decision was arrived at. Appellate judges, however, prefer surgically clean findings that remove all doubt on any issue raised by enterprising counsel. The problem is that this court (and, to some extent, trial counsel) deals in hindsight on appeals, whereas the trial court must deal with reality; the trial judge rarely suspects that the decision will be appealed, and, if so, what issues will be raised. As a result, the findings frequently do not cover the issues raised on appeal to the extent we would like. Trial judges do not have time available to make findings concerning every conceivable issue, and to force them to do so in every case would not only halt the exemplary record they have achieved but also force them to considerably reduce their present output.

The alternative is to do what I attempted to do in *Burch*—and that is to have the best of two worlds in that appellate courts would have adequate findings to aid in reviewing the case on appeal, and the trial courts would have an opportunity to make adequate findings without being forced to make unnecessarily long ones in routine cases. It seemed to me when I authored

*Burch* that the Supreme Court had that solution in mind when the decision was made in *Celco.* It seems to me not to place an undue burden on the trial bar to tell them that if they have a question concerning the adequacy of the findings of facts after the appeal has commenced, the time to clarify that question is then, not one to two years later when the case is remanded.

Remanding a case to the trial court for rehearing is such a waste of time for all concerned. The case is temporarily taken off our docket and we lose the opportunity to dispose of a pending appeal. Three judges have read the briefs and examined the records; staff time has been used, and considerable time has been expended both by our appellate clerk's office and the district court clerk's office. Then back comes the case on appeal, supported by new briefs and record, to be decided one or two years later. This all results in the litigants being frustrated with the legal system, in additional expenses and, worst of all to my way of thinking, in a delay to the prevailing parties receiving what is their due. I see no distinction between whether trial counsel requests specific findings in an area in issue or whether an appellate court requests the same thing at a much later time. In either event, the trial judge will know the findings are material to the issue on appeal, and justice will best be served by the trial judge being given an opportunity to make that finding at the earliest possible date.

I would, however, urge the Supreme Court to accept review of this or some similar case. At the present time, some panels of this court are routinely remanding cases to the trial court for additional findings of fact while others are following *Celco* and *Burch.* A decision reached in this court should not be governed by the composition of the panel that is assigned to hear and decide that particular case.

REES, J.: I dissent.

"In all actions tried upon the facts without a jury . . . the judge *shall* find, and either orally or in writing state, the controlling facts." K.S.A. 60-252(*a*). (Emphasis added.)

"In all contested matters submitted to a judge without a jury . . . the judge *shall* state the controlling facts . . . *and* the legal principles controlling the decision." Supreme Court Rule 165, 228 Kan. lxxxi. (Emphasis added.)

"Judges of a court of record, unlike a jury which may render an unreasoned decision in a general verdict, *must,* under our statute and Rule [165], 'go on the line' . . . and render a 'reasoned decision'—that is, assign reasons for the

decision rendered." *Brown v. Wichita State University, P.E.C., Inc.,* 217 Kan. 661, 664-665, 538 P.2d 713 (1975). (Emphasis added.)

"Our cases are legion to the effect that the trial court is the one empowered to weigh the evidence, determine the credibility of witnesses, and find the facts. With that power goes the concomitant *duty* to set forth the controlling facts and principles of law." *Read v. Estate of Davis,* 213 Kan. 128, 135, 515 P.2d 1096 (1973). (Emphasis added.)

"In civil actions tried to the court the rules requiring expression of controlling findings of fact (K.S.A. 60-252[*a*]) and controlling principles of law [Rule 165] are designed as an aid to the integrity of the decision. They are *mandatory* and should be fairly observed by the trial judge." *Duffin v. Patrick,* 212 Kan. 772, Syl. ¶ 2, 512 P.2d 442 (1973). (Emphasis added.)

"*Absent [K.S.A. 60-252],* the trial court's judgment would inferentially carry the prerequisite findings of fact in favor of the appellee." *Clithero v. Key Securities, Inc.,* 214 Kan. 380, 385, 520 P.2d 1225 (1974). (Emphasis added.)

Unfortunate reliance is placed upon *Celco, Inc. of America v. Davis Van Lines, Inc.,* 226 Kan. 366, 598 P.2d 188 (1979). The text of that opinion discloses the relevant "holding" and the related syllabus is obiter dictum. ("We point out this was a default judgment under K.S.A. 60-255[*a*] where the trial court need only conduct such hearings as it deems necessary. The court was not obligated to make findings of fact." 226 Kan. at 368-69.) The authorities cited in the quoted comment from Gard's Kansas C. Civ. Proc. § 60-252 (1963), all predate enactment of K.S.A. 60-252(*a*) and adoption of Rule 165 and its predecessor, Rule 116.

In the case before us, the December 4, 1980, journal entry recites only the language quoted by Judge Swinehart and a "tracing [of] the procedural history of this action" in the trial court. The record contains *no* oral or written findings of fact and *no* oral or written statement of controlling legal principles. (*Cf. Burch v. Dodge,* 4 Kan. App. 2d 503, 504, 507, 608 P.2d 1032 [1980]—findings of fact and conclusions of law stated but found inadequate on appeal.) There is no "reasoned decision" stated. The majority has retried the case on the evidentiary record with the burden of proof now on the appealing natural parents. Even in the earliest case cited in Gard's comment, *Shuler v. Lashhorn,* 67 Kan. 694, 700, 74 Pac. 264 (1903), it was held the appellate court "has no authority to make findings of fact or to canvas evidence for that purpose. Its function is to review alleged errors."

Only *controlling* fact findings and *controlling* conclusions of law are required. It is not necessary to resolve or state resolutions of all fact questions raised. Extraneous legal principles need not

be stated. It is a reasonable responsibility of prevailing counsel to see that the record supports affirmance on appeal. An analogous example is the responsibility of counsel to see that rulings on trial objections are made. *Schlatter v. Ibarra,* 218 Kan. 67, 73, 542 P.2d 710 (1975).

This case should be remanded to the trial court for findings of fact and statement of principles of law controlling the decision, if not for a new trial. (Remand for findings of fact and conclusions of law was ordered in *Read v. Estate of Davis,* 213 Kan. at 135-136; remand for new trial was ordered in *Baker University v. K.S.C. of Pittsburg,* 222 Kan. 245, 254, 564 P.2d 472 [1977], and *Mies v. Mies,* 217 Kan. 269, 274-275, 535 P.2d 432 [1975].)