NOT DESIGNATED FOR PUBLICATION

Nos. 124,227
124,228

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of W.G. and A.G.,
Minor Children.

MEMORANDUM OPINION

Appeal from Osage District Court; TAYLOR J. WINE, judge. Opinion filed March 4, 2022.
Affirmed.

*Kathryn S. Polsley*, of Ottawa, for appellant natural mother.

*Jack J. Hobbs*, county attorney, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and SCHROEDER, JJ.

PER CURIAM:  In this consolidated appeal, the natural mother (Mother) of W.G.,
born in 2017, and A.G., born in 2016 (the children) appeals from the district court's
findings of unfitness and termination of her parental rights to the children. Mother argues
the district court's journal entry of termination is improper, alleging it is inconsistent with
the district court's findings on the record at the termination hearing. Mother also argues
the district court failed to make a finding the conduct or condition rendering her unfit was
likely to continue for the foreseeable future and that termination of her parental rights
was in the children's best interests. After a review of the record, we are unpersuaded by
Mother's arguments and affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

The events giving rise to this appeal began on June 23, 2019. At that time, Mother and the children were living with the children's maternal grandmother (Grandmother). A.G. was attacked by a dog living at Grandmother's home, causing severe injuries which ultimately required surgical intervention. When officials arrived at the home to investigate, they found Grandmother's house in unsanitary condition, with dog feces all over the house and unkenneled dogs, which were believed to be hybrid wolf dogs, in the house. A.G. and W.G. were taken into protective custody based on A.G.'s injuries and the condition of the home.

The State petitioned the district court to adjudicate the children as children in need of care (CINC), which the district court did following Mother's entry of a no-contest statement to the allegations in the State's CINC petition. Efforts to reintegrate the children into Mother's home did not go well. During the pendency of the proceedings various case plan tasks were developed for Mother, which included:

- obtaining and maintaining safe, clean, and stable housing;
- obtaining a mental health assessment and following the recommendations in the assessment;
- obtaining a substance abuse assessment and following the recommendations of the assessment;
- submitting to random urinalysis (UA) testing for illegal substances;
- obtaining a batterer's intervention assessment;
- completing parenting classes through Life Care Center in Ottawa; and
- obtaining and maintaining gainful employment.

In June 2020, due to a lack of progress toward reintegration, the district court determined reintegration was no longer a viable goal and ordered the State to file a motion seeking a finding of unfitness and termination of Mother's parental rights. The State did so, and the district court held a termination hearing on the State's motion on October 23, 2020. Mother did not appear at the hearing but was represented through her attorney. Mother's attorney and Grandmother indicated they were unsuccessful in contacting Mother to find out if or when she would appear because Mother did not have a working phone. The children's natural father (Father) also failed to appear at the hearing. Because neither Mother nor Father were present, the district court requested a proffer of the expected evidence from the parties.

The State proffered evidence regarding the injuries to A.G., which led to the initiation of the proceedings, and the concerns with the family's living conditions at the time. The State informed the district court of Mother's case plan tasks as outlined above. The State explained Mother had failed to obtain and maintain gainful employment or suitable housing. As of January 2020, Mother reported she was living in her car. The State further indicated Mother had failed to complete the batterer's intervention assessment. While Mother claimed she had attended parenting classes, she never provided proof of attendance to her caseworkers. Mother had obtained a mental health assessment but failed to follow through on the recommendations in the assessment. Mother also had obtained a drug and alcohol evaluation and even completed inpatient drug and alcohol treatment. However, it was recommended Mother continue with outpatient drug and alcohol treatment, which she did not do. Mother also failed to show for 29 of 33 requested UA tests. Of the five she took, Mother had one positive test for THC and another positive test for methamphetamine. The State further proffered Mother only had two visits with the children between June 2019 and October 2020.

Mother's attorney proffered limited evidence, asserting the district court's order that Mother submit to and provide negative UA testing in order to visit the children drove

Mother into depression and worsened her addiction issues. Counsel further claimed Mother's efforts to fulfill her case plan tasks suffered due to difficulties Mother had with a new caseworker who had been assigned to her case. Grandmother likewise proffered limited evidence, claiming the dogs in her home were American tiger shepherds. She asserted the dogs had been let into her home by the police when they arrived and were left there for several hours, resulting in the unsanitary conditions. Grandmother claimed Mother had more than two visits with the children but offered no specific number or dates. Grandmother told the district court that Mother had not received adequate assistance to complete the majority of her case plan tasks.

The district court allowed the parties to make arguments following their proffers of evidence. After hearing the arguments and proffered evidence, the district court made the following findings:

> "All right. With regard to mom, I'll make the following findings of fact.
> "The children, I guess, came in because of this dog injury. And as [the children's guardian ad litem], I think, proffered or pointed out that mom wasn't necessarily there when that happened.
> "I think that all signs pointed to mom . . . at least making some effort at the beginning like [the children's guardian ad litem] said to maybe get the kids back in the home but it didn't pan out.
> "So I'll find she did obtain her alcohol and drug assessment. She underwent inpatient treatment successfully. However, she was directed to outpatient treatment. I'll find she did not complete that.
> "I'll find that the State or DCF requested 33 UAs but she failed to appear for 29 which all count as positive. She had three negative, one positive for THC. And more concerning, [a] more recent one for methamphetamine.
> "She's failed to complete her parenting classes.
> "And then as far as just the basic skill as of not very long ago she was living in her car. She doesn't have a house. She doesn't have a job. She doesn't have a way to provide for the children.
> "She's had two total visits with the kids since June 23rd of 2019.

"So based on all those facts I'll find that [K.S.A.] 38-2269(b)(3) applies.

"She has a narcotic issue or drug issue that renders her unable to care for the ongoing physical, mental, or emotional needs for the children as well as [K.S.A.] 38-2269(b)(8), . . . that she's not adjusted her circumstances to what the children need.

"I'll also find [a] rebuttal . . . presumption applies that she's unfit because the children have been [in an out-of-home] placement for more than a year and there's been nothing proffered that would lead me to overcome that rebuttal . . . presumption.

"So based on those facts, I'll find there is clear and convincing evidence that she's unfit and I'll terminate her parental rights [to] the children."

The district court subsequently filed a written journal entry of its finding of unfitness and termination of Mother's parental rights. The journal entry explicitly indicated the district court found clear and convincing evidence (1) Mother was unfit, (2) the reasons for Mother's unfitness were unlikely to change in the foreseeable future, and (3) termination of Mother's parental rights was in the best interests of the children. The district court also terminated Father's parental rights; however, he is not a party to this appeal.

Mother timely appeals.

DID THE DISTRICT COURT ERR IN TERMINATING MOTHER'S PARENTAL RIGHTS?

*Standards of Review and Applicable Legal Principles*

A parent has a constitutionally recognized fundamental right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, parental rights for a child may be terminated only upon clear and convincing proof of parental unfitness. K.S.A. 2020 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014). Clear and

convincing evidence is evidence sufficient to establish that the truth of the facts asserted is highly probable. "Clear and convincing evidence is an 'intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt.' [Citation omitted.]" *In re Adoption of C.L.*, 308 Kan. 1268, 1278, 427 P.3d 951 (2018).

As provided in K.S.A. 2020 Supp. 38-2269(a), the district court must find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition," making him or her "unable to care properly for a child" and the circumstances are "unlikely to change in the foreseeable future." In reviewing a district court's termination of parental rights, we view all the evidence in the light most favorable to the prevailing party to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence that parental rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not "weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. at 705.

Upon making a finding of unfitness of the parent, the district court must "consider whether termination of parental rights . . . is in the best interests of the child. In making the determination, the court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2020 Supp. 38-2269(g)(1). The district court makes the best-interests determination based on a preponderance of the evidence, which is essentially entrusting the district court to act within its sound judicial discretion. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. We review a district court's best-interests determination for an abuse of discretion,

> "which occurs when no reasonable person would agree with the district court or the
> district court premises its decision on a factual or legal error. In determining whether the
> district court has made a factual error, we review any additional factual findings made in

6

the best-interests determination to see that substantial evidence supports them. [Citation omitted.]" *In re R.S.*, 50 Kan. App. 2d at 1116.

The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

A. *Was the District Court's Journal Entry of Termination Inconsistent with Its On-the-Record Findings?*

1. *Mother fails to properly brief or argue her contentions on appeal.*

As a preliminary matter, we note that Mother largely fails to properly brief the issues on appeal. Mother fails to support most of the factual statements in her brief with proper citations to the record on appeal and largely cites to materials included in an appendix to her brief. This procedure is inconsistent with Supreme Court Rule 6.02(a)(4) (2022 Kan. S. Ct. R. at 36), which provides, in pertinent part: "The facts included in the statement [of facts] must be keyed to the record on appeal by volume and page number. The court may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal."

Moreover, Mother takes issue only with the district court's journal entry following the termination hearing and does not appear to argue the district court erred in finding she was unfit, her unfitness was likely to continue for the foreseeable future, and termination of her parental rights was in the children's best interests. To the extent she attempts to make any such arguments, we conclude they have only been incidentally raised but not actually argued on appeal. This approach is fatal to her appeal. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (issue not briefed deemed waived or abandoned);

*Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (point raised incidentally but not argued deemed waived or abandoned).

Mother's real complaint is that the district court failed to explicitly make the right findings at the right time to support its unfitness findings and termination of parental rights, not whether the evidence in the record supports the district court ruling. We are unpersuaded by this line of approach. Mother also incidentally asserts, without fully briefing or arguing the point, that any failure by her trial counsel to object to the district court's findings, lack of findings, or otherwise contest the accuracy of the journal entry may have been the result of ineffective assistance of trial counsel. Again, because she fails to adequately brief the point, we deem it waived or abandoned. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

2.      *The journal entry of termination accurately reflected the district court's findings at the termination hearing.*

However, even if Mother had properly presented her arguments to us, we would still be unpersuaded by them. First, Mother argues the journal entry of termination was substantially inaccurate in comparison to the district court's findings at the termination hearing. We disagree. Nothing about the district court's journal entry is inconsistent with its on-record findings at the termination hearing on October 23, 2020. At the termination hearing, the district court explained Mother was unfit because of ongoing substance abuse issues, her failure to adjust her circumstances to meet the needs of the children, her limited contact with the children during the 16 months they were in an out-of-home placement, and her failure to follow through on several case plan tasks. Based on these findings, the district court indicated it was going to terminate Mother's parental rights.

The factual basis for the district court's unfitness findings and termination of parental rights is clear from the court's on-record explanation. At the end of its factual

findings regarding Mother, the district court stated: "So based on those facts, I'll find there is clear and convincing evidence that she's unfit and I'll terminate her parental rights [to] the children." The only difference between the transcript of the district court's ruling and the journal entry was the explicit finding that the district court found by clear and convincing evidence all of the facts showing Mother was unfit and that her unfitness was unlikely to change in the foreseeable future. These explicit findings in the journal entry are consistent with the district court's oral pronouncements. Clear and convincing evidence supports the finding of Mother's unfitness.

To the extent there was any ambiguity in the district court's oral findings, the journal entry fully clarifies that the district court relied on: (1) the correct standard of proof—clear and convincing evidence—for finding Mother unfit, finding her condition was unlikely to change in the foreseeable future, and terminating her parental rights; and (2) the correct legal standard as to the ongoing nature of Mother's unfitness—unlikely to change in the foreseeable future—and why her parental rights should be terminated—it was in the children's best interests. The additional findings in the journal entry are a logical clarification of the district court's on-record findings.

It appears to us that Mother either erroneously conflates a standard from criminal sentencing proceedings—the sentence pronounced from the bench, not the journal entry of sentencing controls—or simply advances an argument not supported by the law. Compare K.S.A. 2020 Supp. 60-258 ("No judgment is effective unless and until a journal entry or judgment form is signed by the judge and filed with the clerk.") with *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012) (criminal sentence pronounced from bench controls). Here, the journal entry was consistent with the district court's oral findings, and Mother fails to demonstrate any requirement a civil journal entry must conform exactly to the district court's findings on record.

9

The limited authorities Mother relies on in her brief do not support her argument either. Mother relies on *Kelso v. Kelso*, 182 Kan. 752, 324 P.2d 174 (1958); however, *Kelso* is readily distinguishable. There, the district court explained on the record it was giving the father $15,000 as his share of the marital property in a divorce proceeding, but the parties agreed the father still owed $980 in unpaid child support. Because the original journal entry discussed the marital property but failed to mention the outstanding child support, it effectively relieved the father of an obligation which was undisputedly owed. The district court subsequently entered a nunc pro tunc journal entry, reflecting the unpaid child support was still owed. Our Supreme Court held this was proper because the original journal entry stated the father's share of marital property was for personal property accumulated during the marriage and for improvements to or proceeds from the sale of the couple's real property. The transcript of the relevant hearing reflected any alimony owed had been considered in the division of marital property, but the district court explicitly stated: "'The order should be that he continue to pay for the support of the child. I have not covered that.'" 182 Kan. at 755. Because the journal entry was clearly at odds with the intent of the district court's ruling, it was properly corrected.

Here, however, the district court was explicit in finding Mother unfit by clear and convincing evidence and her parental rights should be terminated. Its ultimate conclusion—Mother's parental rights should be terminated—necessarily required the district court to find (1) Mother's unfitness was unlikely to change in the foreseeable future, and (2) termination of her parental rights was in the children's best interests. Those were the district court's findings in the journal entry; therefore, they are consistent with the decision announced on the record.

Mother's further reliance on *Radke v. Kansas Dept. of Health and Environment*, 23 Kan. App. 2d 774, 936 P.2d 286 (1997), is likewise unpersuasive. There, the district court initially indicated on the record it did not have jurisdiction to entertain Radke's appeal of KDHE's administrative action but, nonetheless, voided KDHE's order. However, in its

written journal entry, the district court expressly stated it had jurisdiction. Because KDHE's notice of appeal stated the appeal was taken "*from the Journal Entry* of the district court," the *Radke* panel found the issue was not ripe for appeal because the district court voided KDHE's order without presentation of any evidence from either party as to whether the district court had jurisdiction. 23 Kan. App. 2d at 782. In contrast, the parties here were given an opportunity to present evidence and make arguments as to Mother's parental fitness and whether her parental rights should be terminated. Perhaps most importantly, the district court's on-record findings are in no way expressly contrary to the journal entry. We see no error in the district court's journal entry.

B.      *Did the District Court Make Sufficient Findings That Termination of Mother's Parental Rights Was in the Children's Best Interests?*

1.      *Mother was unfit.*

As previously noted, Mother does not actually contest the district court's findings she was unfit, nor does she advance any meaningful argument that even if she was unfit, her unfitness was likely to change in the foreseeable future. Thus, she has waived or abandoned any such claims. See *Davis*, 313 Kan. at 248. Moreover, to the extent there was any lack of findings by the district court either in the journal entry or at the termination hearing, Mother failed to object before the district court. As the State correctly points out, if a party fails to object to the district court's findings or lack of findings, we may presume the district court made all necessary findings to support its decision as long as the record is sufficient to support the presumption. *In re Lett*, 7 Kan. App. 2d 329, 332, 640 P.2d 1294 (1982). Here, the record is more than sufficient for us to presume the district court made all the necessary findings to support its decision.

As to the merits of whether sufficient evidence supports the district court's unfitness findings, we conclude the record supports them. The district court correctly

11

noted Mother completed inpatient drug and alcohol treatment but failed to follow through on the recommendation for continued outpatient treatment. Mother also failed to show up for 29 of the 33 requested UA screenings, which the district court stated were, therefore, presumed positive. Of the five she actually showed up for, three were negative, one was positive for THC, and one was positive for methamphetamine. The district court correctly concluded Mother had ongoing substance abuse issues rendering her incapable of properly caring for the children. See K.S.A. 2020 Supp. 38-2269(b)(3) (in determining parent's fitness, court may consider parent's "use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child.").

The issues in this case arose because A.G. was attacked by a dog while Mother and the children were living in Grandmother's home. When officials responded to the home, they found it in a highly unsanitary condition. At the time of the termination hearing, the district court noted Mother was living in her car and had no job or means of providing for the children. It is plain that Mother's living situation had gone from bad to worse as the case progressed. The district court properly concluded Mother was unable to provide a safe and suitable home for the children and unable to properly provide for their care and well-being.

The district court also noted that in the 16 months the children had been out of Mother's custody, she only had 2 visits with them. Mother also failed to complete required parenting classes and failed to complete a required batterer's intervention assessment as directed in her case plan tasks. The district court further noted there was a failure of reasonable efforts by appropriate agencies to rehabilitate the family. See K.S.A. 2020 Supp. 38-2269(b)(7). Based on her living situation, ongoing substance abuse issues, failure to follow through on case plan tasks, and lack of contact with the children, a reasonable fact-finder could easily conclude, just as the district court did, that Mother

failed to make sufficient efforts to adjust her circumstances to properly meet the physical, mental, and emotional needs of the children. See K.S.A. 2020 Supp. 38-2269(b)(8).

During the pendency of the proceedings, Mother either failed to change her circumstances or make lasting progress in case plan tasks. While she would make some progress such as completing inpatient drug and alcohol treatment, she would then regress by failing to complete outpatient treatment, testing positive on certain UAs, and failing to show for the majority of the requested UAs. Mother also did not appear at the termination hearing and could not be contacted by Mother's attorney or Grandmother because she did not have a working phone. Given her past conduct, failure to follow through on case plan tasks, and general failure to appear and participate at relevant stages of the proceedings, a reasonable fact-finder could also conclude Mother's conduct or condition causing her unfitness was unlikely to change in the foreseeable future. Courts can consider a parent's past conduct as evidence regarding the reasonable likelihood of any future change in parental fitness. See *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019); *In re Price,* 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). We conclude the district court properly found there was clear and convincing evidence Mother was unfit and her unfitness was unlikely to change in the foreseeable future.

> 2.    *Termination of Mother's parental rights was in the best interests of the children.*

Mother also claims the district court failed to make a finding her unfitness was likely to continue for the foreseeable future and further failed to make a finding that the termination of her parental rights was in the children's best interests. Her argument is unsupported by the record.

The district court clearly stated on the record it found Mother unfit by clear and convincing evidence and her parental rights should be terminated. The district court's

13

journal entry included the facts and statutory grounds it relied on in finding Mother unfit. The journal entry explicitly stated, in relevant part: "The *evidence is clear and convincing* that . . . [Mother] . . . is unfit by reason of conduct or condition which renders the parent unable to care properly for [the children] *and the conduct or condition is unlikely to change in the foreseeable future*." (Emphases added.) The journal entry further stated, in relevant part:

> "Considering the physical, mental or emotional health of the [children], termination of parental rights is in the best interests of the [children] . . . and the physical, mental or emotional needs of the [children] would best be served by termination of parental rights. The parental rights of [Mother] . . . should be terminated."

Mother's argument is wrongly premised on the idea that the district court was required to make on-the-record findings of all factual determinations and legal conclusions. K.S.A. 2020 Supp. 60-252(a)(1) merely requires that

> "[i]n an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately. The findings and conclusions *may be stated on the record* after the close of evidence, *or may appear in an opinion or a memorandum of decision* filed by the court." (Emphases added.)

Nothing in the statute requires a district court to orally state all its findings of fact and conclusions of law on the record from the bench. Here, the district court stated the majority of its factual findings and legal conclusions orally on the record. Then, the district court's journal entry restated those factual findings and legal conclusions with additional findings of fact and conclusions of law. The totality of the district court's findings and conclusions as reflected in the journal entry properly support its ultimate determination.

14

Mother again relies on authorities which are unpersuasive, readily distinguishable, and/or generally inapplicable. Mother cites *In re J.J.*, No. 102,762, 2010 WL 348292 (Kan. App. 2010) (unpublished opinion), asserting: "Boilerplate language found in the Journal Entry, unsupported by any findings in the record, that the conduct or condition is unlikely to change in the foreseeable future, is not adequate." But *In re J.J.* does not support this proposition. There, the panel found: "[T]he district court did not specify a particular standard of proof, either at the hearing *or in its journal entry*." (Emphasis added.) 2010 WL 348292, at *1. The panel ultimately found the district court's ruling improper because it was unclear what standard of proof was relied on, noting:

> "K.S.A. 2008 Supp. 38-2269(a) clearly directs that parental rights may be terminated 'when the court finds *by clear and convincing evidence* that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future.' We have consistently held that the better practice dictates that the district court expressly reflect in its journal entry that this standard of proof was employed in making all findings. *In re B.E.Y.*, 40 Kan. App. 2d 842, 844, 196 P.3d 439 (2008)." *In re J.J.*, 2010 WL 348292, at *1.

Here, the district court did precisely what the *In re J.J.* panel suggested. The journal entry expressly reflected that the district court applied the clear and convincing evidence standard of proof in making all of its findings. Mother's citation to *In re J.J.* undermines her argument.

Mother also relies on *In re K.R.*, 43 Kan. App. 2d 891, 233 P.3d 746 (2010), to support her argument the district court's findings were insufficient as to whether her unfitness was unlikely to change in the foreseeable future. *In re K.R.* is readily distinguishable because the panel noted there was undisputed testimony the mother's unfitness was likely to change within six months. The panel also noted the district court considered various ways the mother failed to act in the children's best interests but did not

15

clearly find termination of her parental rights was in the children's best interests. 43 Kan. App. 2d at 902-04. Here, Mother presented no evidence at all, much less anything suggesting, that her unfitness was likely to change in the foreseeable future. Based on Mother's failure to make any meaningful change in her ability to properly provide care for the children, the district court did not abuse its discretion in finding that termination was in the children's best interests.

In conclusion, we find no error in the district court's oral or written findings and conclude sufficient facts support the district court's unfitness findings. We further conclude the district court did not abuse its discretion in terminating Mother's parental rights.

Affirmed.